James M. COLLINS, Appellant,

v.

B. J. "Red" McCOMBS, Appellee.

No. 15285.

Court of Civil Appeals of Texas,
San Antonio.

May 29, 1974.

Rehearing Denied July 3, 1974.

Tuck R. Chapin, San Antonio, for appellant.

Baskin, Casseb, Gilliland, Rodgers & Robertson, San Antonio, for appellee.

CADENA, Justice.

Plaintiff, James M. Collins, appeals from a summary judgment denying him recovery in a case in which plaintiff sought damages for an alleged fraud perpetrated on him by defendant, B. J. "Red" McCombs.

The allegations in plaintiff's petition may be summarized as follows:

1. In the summer of 1968, plaintiff was an employee of a corporation owned or controlled by defendant and was being paid $1,050.00 per month. Prior to September 20, 1968, G. L. Smith, who owned and operated the "Brackenridge Eagle," a miniature train ride in Brackenridge Park in the City of San Antonio, offered to sell the train operation to plaintiff for the sum of $100,000.00.

2. Plaintiff, who did not have $100,000.00, began looking for some way to finance the purchase of the Eagle. After several unsuccessful efforts to secure financing, plaintiff spoke to defendant, who expressed interest in the proposed transaction.

3. Plaintiff and defendant orally agreed that defendant would furnish the $100,000.-00 necessary to consummate the purchase of the Eagle, with plaintiff being responsi-

ble for the active management of the train ride. Plaintiff and defendant would be partners or joint adventurers, with plaintiff owning a 40 percent interest in the enterprise and defendant owning a 60 percent interest. However, it was agreed that defendant would be entitled to recover all of the $100,000.00 which he invested in the purchase of the train before plaintiff would be entitled to share in the profits of the business. "The books would be set up so that" defendant would recover his investment within a three-year period, during which time plaintiff would draw a salary of $1,000.00 a month for his services in managing the business, and, at the end of the three-year period, would begin to share in the profits of the business, "and would pay the sum of Ten Thousand Dollars ($10,000.00) from the net profits to" defendant. It was also agreed that "any needed paperwork to show Plaintiff's ownership interest would be furnished him at the time he started to draw his profits."

4. The train was purchased by defendant on September 20, 1968, and plaintiff immediately began to manage the operation of the train under a franchise, which expires in 1981, granted by the City of San Antonio.

5. The "terms and manner by which" the train was purchased by defendant were unknown to plaintiff. At the time of the sale, a corporation was formed and defendant placed all of the stock of the corporation in the names of his wife and children. Defendant retained title to the equipment, which he leased to the corporation for the sum of $2,000.00 per month. Although plaintiff subsequently learned of the formation of the corporation, he was not alarmed, "as he thought" 40 percent of the stock in the corporation "was as good as a" 40 percent interest in an unincorporated business.

6. Plaintiff managed the operation of the train for three years following September 20, 1968, receiving only the salary of $1,000.00 per month. At the end of the three-year period plaintiff sought to meet with defendant for the purpose of discussing the manner in which plaintiff would begin to be paid his portion of the profits, but he was unable to arrange a meeting with defendant until January, 1972, at which time defendant stated that plaintiff "was not ever going to get" an interest in the business and that it had never been defendant's intention that plaintiff should have an interest in the business.

Plaintiff sought the recovery of $248,975.43, which sum he alleged represented 40 percent of the value of the business, and of an additional $232,000.00, which he alleged represents his share of the profits of the business during the remaining life of the franchise.

Defendant moved for summary judgment because (1) plaintiff's pleadings show that plaintiff's claim is based on defendant's non-performance of an oral promise which by its terms, insofar as plaintiff's right to participate in the profits is concerned, was not to be, and could not be, performed within a period of one year and, therefore is unenforceable under the statute of frauds; and (2) plaintiff's pleadings show on their face that the cause of action is barred by the two-year statute of limitations.

Section 26.01(b)(6), Tex.Bus. & Comm. Code Ann., V.T.C.A., provides that a promise or agreement which is not to be performed within one year from its date is unenforceable unless the promise or agreement, or a memorandum thereof, is in writing and signed by the person to be charged or by someone lawfully authorized to sign for him. The question before us is whether this provision precludes a suit sounding in fraud where the alleged fraud consists of a false [1] oral promise which is not to be performed within one year.

There are many cases which bear indirectly or argumentatively on the question,

---

1. The term "false promise" is used to refer to a promise which the promisor, at the time he made the promise, had no intention of fulfilling.

such as Yarber v. Iglehart, 264 S.W.2d 474 (Tex.Civ.App.—Dallas 1953, no writ), where it was said that the statute of frauds is intended to prevent fraud, and not to aid in its perpetration. But the cases bearing directly on the question of whether the statute prevents an action for fraud or deceit based upon an oral false promise within the statute are relatively few, and the courts considering the problem have reached different results. Anno: 104 A.L.R. 1420 (1936).

Our Commission of Appeals, in an opinion adopted by the Supreme Court, has said that a cause of action for fraud, based on a false promise, is "grounded in tort and not in contract," and that "responsibility for the tort committed is not affected by the fact that the false promise was made orally." Sibley v. Southland Life Ins. Co., 36 S.W.2d 145, 146 (Tex.Comm'n App.1931, opinion adopted). This holding is consistent with the view that the gist of the fraud in cases involving promises made with no intention to perform is not the breach of the promise, but the fraudulent intent of the promisor, the false representation of an existing intention to perform where such intent is in fact nonexistent, and the deception of the promisee by such false promise. 37 Am.Jur.2d, Fraud and Deceit, Section 68, pp. 106–107.

However, in Wade v. State National Bank, 379 S.W.2d 717, 720 (Tex.Civ.App. —El Paso 1964, writ ref'd n. r. e.), it was said, without referring to the opinion in *Sibley*, that there could be no action for fraud based on a contract declared unenforceable by the statute of frauds, because to allow recovery in such a case "would be to create an anomoly, and allow one to do indirectly what he could not by law do directly." No authority was cited in support of this statement, although there are cases from foreign jurisdictions on which reliance might have been placed.

■ We do not consider the *Sibley* and *Wade* formulations of the general rule

to be necessarily in conflict. Even if it be conceded that an action in tort for deceit is unaffected by the provisions of the statute of frauds, the judicial disregard of the statute should be limited to situations in which the essence of the action truly sounds in tort. Where plaintiff, although casting his complaint in the form of a cause of action for fraud, is attempting to recover damages for the breach of the promise, it is clear that he is, in effect, attempting to enforce the oral agreement. Where, as here, plaintiff is seeking to recover what he would have gained had the promise been performed, is is evident that the gist of his cause of action is the breach of the unenforceable promise. At least since the decision in George v. Hesse, 100 Tex. 44, 93 S.W. 107 (1906), it has been settled that, except in cases of fraud related to transactions in real estate,[2] the measure of damages for fraud and deceit is not what the plaintiff might have gained, had the representation been true, but what he has lost. Since plaintiff is here seeking to recover what he would have gained had the promise been performed, it is apparent that his action, while cast in language sounding in tort, is an indirect attempt to recover for the breach of the unenforceable promise and is, therefore, barred by the statute of frauds. See Canell v. Arcola Housing Corp., 65 So.2d 849 (Fla. Sup.1953); Papanikolas v. Sampson, 73 Utah 404, 274 P. 856 (1929).

■ Plaintiff assets that the fact that he performed his obligation under the agreement is sufficient to preclude reliance by defendant on the statute of frauds. We disagree. Cases such as City of Tyler v. St. Louis S. W. Ry. Co., 99 Tex. 491, 91 S. W. 1 (1906), in which full performance by plaintiff has been held sufficient to take the agreement out of the statute are all cases in which plaintiff has fully performed his obligations under the contract within one year. See Paschall v. Anderson, 127 Tex. 251, 91 S.W.2d 1050 (1936), where a plaintiff whose performance had not taken

2. See Tex.Bus. & Com.Code Ann., Section 27.01.

place within a year was denied recovery as against a defendant who relied on the statute of frauds. See also Jackman v. Anheuser–Busch, Inc., 162 S.W.2d 744 (Tex. Civ.App.—Dallas 1942, writ ref'd).

Since we have concluded that the statute of frauds precluded recovery by plaintiff, it is unnecessary to consider whether plaintiff's claim is barred by the two-year statute of limitations.

The judgment of the trial court is affirmed.