**Reece LAWSON, Individually and d/b/a L & L Fine Jewelry, Appellant,**

**v.**

**COMMERCIAL CREDIT BUSINESS LOANS, INC., Appellee.**

**No. 11–84–146–CV.**

Court of Appeals of Texas, Eastland.

May 2, 1985.

Rehearing Denied May 30, 1985.

Donald M. Hunt, Carr, Evans, Fouts & Hunt, Lubbock, for appellant.

Rick W. Hightower, Biggers, Beasley, Amerine & Earle, Dallas, for appellee.

DICKENSON, Justice.

This is a summary judgment case. Since there are fact issues, we reverse and remand.[1]

Reece Lawson sued Commercial Credit Business Loans, Inc., alleging a cause of

---

**1.** This appeal was transferred from the Dallas Court of Appeals to this Court on April 26, 1984.

See TEX.REV.CIV.STAT.ANN. art. 1738 (Vernon Supp.1985).

action under the Deceptive Trade Practices—Consumer Protection Act.[2] Lawson also alleged a cause of action for breach of contract. Commercial Credit moved for summary judgment, urging: (1) the jewelry was purchased for resale and, consequently, the transaction was not actionable under the Deceptive Trade Practices Act; (2) there was no contract because the sale of jewelry was never consumated; (3) even if there was a contract, it was unenforceable because of the Statute of Frauds;[3] (4) Lawson's check was never cashed, and without damages there can be no cause of action; and (5) it would be unconscionable to allow Lawson to obtain jewelry worth $874,000 when his bid was only $380,000.

While there was some confusion as to whether purchases for resale were covered by the Deceptive Trade Practices Act at the time this summary judgment was granted on December 22, 1983, the Supreme Court has now resolved the matter. See *Big H Auto Auction, Inc. v. Saenz Motors,* 665 S.W.2d 756 at 758 (Tex.1984):

> To limit "use" would be contrary to the statutory mandate of sec. 17.44 on construction and application of the Act.
>
> The cases holding that a purchase for resale is not a use are inapplicable....
>
> We hold that the purchase by Saenz Motors of two vehicles from Big H Auto Auction, Inc., for resale, is a "use" within in the meaning of the Act.

The summary judgment proof must be viewed, as to all issues which are properly raised by the motion for summary judgment and the nonmovant's response, as placing the duty on the movant to negate all of such issues of law and fact. *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671 at 678 (Tex.1979). When Commercial Credit filed its motion for summary judgment, it assumed the "burden of establishing that there exists no material fact issue" and that it "is entitled to judgment as a matter of law." *Swilley v. Hughes,* 488 S.W.2d 64 at 67 (Tex.1972).

Lawson's deposition indicates that an auctioneer told him about the jewelry which Commercial Credit was offering for sale. Lawson went from his home in Hereford to look at the jewelry in Dallas. A representative of Commercial Credit permitted Lawson to inspect the jewelry and the inventory sheets. The figures which Commercial Credit gave to Lawson showed 5,700 gold charms, 7,757 gold chains and 13,000 gold earrings. Lawson testified that he "bid them $380,000" and handed him a personal check dated September 6, 1982. Commercial Credit wanted a cashier's check or wire transfer of funds. Lawson knew they already had a bid for $375,000. After lunch Mr. Meyer of Commercial Credit, according to Lawson's deposition, said:

> You own the merchandise, but the original owner ... has five days to pick up the merchandise, but I do not feel he's financially able.... He owes us over a mill(ion).

Lawson said that he asked Mr. Meyer if they were "going to peddle my bid," and Mr. Meyer said: "Commercial Credit is a big company, and we don't do business that way." Lawson left his personal check and told Commercial Credit they could run it through for collection or that he would bring a cashier's check with him when he came to pick up the jewelry. They agreed that they had a deal. Then they shook hands and left.

Before the five days were up, Lawson learned from another jewelry dealer that he was not "going to get that gold. It's going to Philadelphia." Later Mr. Meyer of Commercial Credit called and told him: "The original owner is getting the merchandise back." Lawson told him that he had heard that they sold the gold to someone else, and Mr. Meyer replied: "No. The original owner's getting the gold back." Three or four days later Lawson's check was returned to him in the mail. Lawson contacted the original owner and confirmed

---

2. TEX.BUS. & COM.CODE ANN. sec. 17.41 et seq. (Vernon Supp.1985).

3. TEX.BUS. & COM.CODE ANN. sec. 2.201 (Vernon 1968).

the fact that he did not get his gold back from Commercial Credit.

■ We find that there is a fact issue [4] as to whether Commercial Credit accepted Lawson's bid, thereby creating an oral agreement to sell the repossessed jewelry to him. Further, we hold that the Statute of Frauds, supra note 3, does not insulate Commercial Credit from liability under the Deceptive Trade Practices Act, supra note 2, for the false and misleading statements which its employees made to Lawson when they found a bidder who would pay more money for the jewelry.

Commercial Credit relies upon, and quotes from, the case of *Keriotis v. Lombardo Rental Trust*, 607 S.W.2d 44 at 45 (Tex.Civ.App.—Beaumont 1980, writ ref'd n.r.e.):

> While there is some confusion in the case law on this subject, an analysis reveals that the holdings have for the most part been harmonious. The reasoning of the court in *Collins v. McCombs*, 511 S.W.2d 745, 747 (Tex.Civ.App.—San Antonio 1974, writ ref'd n.r.e.), is particularly appropriate to the case at bar, and we here adopt its language:
>
> > Even if it be conceded that an action in tort for [misrepresentation] is unaffected by the provisions of the statute of frauds, the judicial disregard of the statute should be limited to situations in which the essence of the action truly sounds in tort.... Since plaintiff is here seeking to recover what he would have gained had the promise been performed, it is apparent that his action, while cast in language sounding in tort, is an indirect attempt to recover for the breach of the unenforceable promise and is, therefore, barred by the statute of frauds.

*Keriotis* also states, 607 S.W.2d at 46:

> In the case at bar ... no attempt is made to establish any acts other than the promise to convey and the failure to do so.

The summary judgment proof in this case raises the fact issue that Commercial Credit did more than merely fail to perform under an oral agreement. It would appear from Lawson's deposition that while Commercial Credit's employees shook hands with Lawson to signify their agreement, took Lawson's check as a deposit, promised him that he could take possession of the jewelry after five days unless the debtor paid off his note, and assured him that they were not "shopping his bid," Commercial Credit was in fact doing that very thing. Moreover, when Commercial Credit found a bidder who would pay $5,000 more than Lawson, its employee wrote Lawson a letter stating that the debtor had reclaimed the jewelry. This was a misrepresentation, for the summary judgment proof shows that the jewelry was sold to a third party who outbid Lawson after Commercial Credit had accepted Lawson's offer.

This is not a situation where a party made an oral contract which is unenforceable because of the Statute of Frauds and then subsequently refused to perform. The summary judgment proof indicates that there are disputed facts which could establish that misrepresentations were made at the very time the oral agreement was made and that additional misrepresentations were made at the time the agreement was breached.

We need not reach the question of whether the deposit constituted payment "made and accepted" within the statutory exception to the Statute of Frauds. Section 2.201(c)(3), supra note 3.

■ The fact that Lawson's check was not cashed does not bar his claim under the Deceptive Trade Practices Act. A "consumer" is defined by the Act as one "who *seeks* or acquires" any goods or services. Section 17.45(4), supra note 2.

Finally, Commercial Credit's defense that Lawson's claim was unconscionable was

---

4. Consequently, we sustain Point of Error number two: "The district court erred in granting summary judgment for defendant, because material issues of fact exist on all elements of a deceptive trade practice cause of action."

not conclusively established. At most, there is a fact issue for the jury to resolve.

The summary judgment is reversed, and the cause is remanded.