Doug McCLURE

v.

Richard DUGGAN.

Civ. A. No. 4-84-278-E.

United States District Court,
N.D. Texas,
Fort Worth Division.

Nov. 27, 1987.

Hill, Heard, O'Neal, Gilstrap & Goetz, Frank Hill and Marcia Wise, Arlington, Tex., for plaintiff.

Gibson, Dunn & Crutcher, Eric W. Buether, Dallas, Tex., for defendant.

### MEMORANDUM OPINION
### AND ORDER

MAHON, District Judge.

Doug McClure, Plaintiff, has brought suit against Richard Duggan, Defendant, alleging that Duggan breached an agreement, including expressed and implied covenants, to sell Foscarini, a race horse, to McClure. McClure further alleges that Duggan's actions associated with this al-

leged breach support claims of fraud, Deceptive Trade Practices Act ("DTPA") violations, conversion, and breach of fiduciary duty. Defendant Duggan has moved for summary judgment, and his motion is ripe for resolution.

## I. *Facts*

Duggan is an Irish subject, temporarily residing in Los Angeles County, California. He is involved in the purchase and resale of European race horses. McClure, a Texas resident, became acquainted with Duggan in 1983 through his trainer, Charles Marikian, who resides and works in California. In October of 1983, Duggan sold a horse by the name of Silk Sash to McClure for $65,-000.

In January of 1984, McClure met with Duggan in California and stated that he desired to purchase a top caliber European race horse. In May, Duggan approached McClure's trainer, Marikian, with information that a suitable horse had become available. On June 2, 1984, McClure telephoned Duggan to discuss the possibility of purchasing Foscarini.

During the weekend of June 2, 1984, McClure met with Duggan in California where all aspects of the proposed terms for the sale of Foscarini were discussed. Duggan advised McClure that the purchase price for Foscarini would be $600,000 and that the horse was located in Ireland. Duggan's veterinarian had previously examined Foscarini and pronounced him "sound."

What occurred at this point in the negotiations is heavily disputed. McClure alleges that he and Duggan entered into an oral agreement whereby McClure would purchase Foscarini for $600,000. McClure further alleges that this oral agreement was subject to the condition that McClure's veterinarian examine Foscarini in California. If McClure's veterinarian did not approve Foscarini, McClure would have the right to reject the horse. Alternatively, if the veterinarian approved Foscarini, McClure would assume all risks associated with the horse's ownership.

Duggan flatly denies these allegations and contends that he and Duggan never entered into an agreement for the sale of Foscarini. It is Duggan's position that an agreement was never reached because McClure insisted on the right to refuse to purchase Foscarini if his veterinarian rejected the horse. Duggan alleges that McClure made a number of counter-proposals during their meeting in California, but he insists that no agreement was ever consummated.

On June 5, 1984, both Duggan and McClure contacted Louis Rowan of Rowan-Wilson Insurance Services in Pasadena, California, for the purpose of determining whether Rowan could obtain insurance on Foscarini. Two documents were prepared in connection with this request for insurance: (1) an Application for Insurance and (2) an Order for Livestock Insurance. These documents were purportedly prepared by an employee of the insurance agency. It is undisputed that Duggan did not sign either document. Mr. Rowan, at the top of the Order for Livestock Insurance, indicated that Duggan was acting as an agent for McClure. Mr. Rowan admits signing Duggan's name on the Application for Insurance and placing his own initials beside the signature. Duggan alleges that these documents were prepared without his knowledge or request.

On June 5, 1984, McClure, now in Texas, received a call from Duggan. The parties disagree as to what transpired during this phone conversation. McClure alleges that Duggan wanted another veterinarian to check Foscarini before the horse left Europe. McClure contends that Duggan was concerned that if Foscarini was disapproved by McClure's veterinarian in the United States, Duggan would be left with the burden of finding another buyer for a horse already pronounced unsound. McClure further alleges that Duggan told him not to send the purchase money and that he, Duggan, would call back to inform McClure when the funds should be sent.

On June 6, 1984, McClure alleges that Duggan called him and stated "Do not wire the money. The horse will not 'vet.'" McClure did not tender the purchase money.

Duggan categorically denies McClure's assertions. Duggan contends that after McClure returned to Texas, Duggan and he discussed McClure's insistence that McClure's veterinarian have the right to inspect and reject Foscarini prior to McClure's obligation to purchase the horse. Duggan insists that McClure continued to assert this condition and, therefore, Duggan informed McClure that he was unwilling to enter into an agreement for the sale of Foscarini. Duggan also denies making the alleged June 6th representation that Foscarini would not "vet."

Foscarini was later sold by Duggan to another purchaser. McClure filed this action. In November of 1984 Foscarini won the Hollywood Derby, conferring winnings of $175,000 upon the horse's new owners.

## II. *Summary Judgment Issues*

A Court may grant summary judgment only if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The movant bears the burden of proof, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970), and all inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmovant. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 1356–57, 89 L.Ed. 2d 538 (1986). The moving party, however, is not required to produce evidence which negates the claims or allegations of its opponent, *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986); rather, it may merely point out the absence of such evidence. *Id.* To avoid summary judgment, the nonmovant must then do more than simply cast "some metaphysical doubt" upon the relevant facts. *Matsushita*, 106 S.Ct. at 1356. The opponent must produce significant probative evidence which supports its complaint. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968); *Joe Regueira, Inc. v. American Distilling Company, Inc.*, 642 F.2d 826, 829 (5th Cir.1981). If the record demonstrates that the trier of fact could not rationally find for the nonmovant, then no genuine issue of material fact exists, and the moving party is entitled to summary judgment as a matter of law. *Matsushita*, 106 S.Ct. at 1356.

### A. *Conflict of Laws Issues*

While federal law governs the procedural standard of review for Defendant Duggan's Motion for Summary Judgment, *Erie Railroad v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938), the law of the forum state controls substantive issues. *Rosenberg v. Celotex Corp.*, 767 F.2d 197, 199 (5th Cir.1985). State substantive law includes a state's conflict of laws rules. *Klaxon Co. v. Stentor Electric Co.*, 313 U.S. 487, 491, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). This means that a federal district court is bound by the choice of law rules in which it sits. *Randall v. Arabian American Oil Co.*, 778 F.2d 1146, 1152 n. 9 (5th Cir.1985). Therefore, the choice of law rules of Texas apply to this case.

The Texas Supreme Court has set forth the principle controlling choice of law determinations: "in all choice of law cases, except those contract cases in which the parties have agreed to a valid choice of law clause, the *law of the state with the most significant relationship to the particular substantive issue* will be applied to resolve that issue." *Duncan v. Cessna*, 665 S.W. 2d 414, 421 (Tex.1984) (emphasis added). As will be seen, the issues which bear on the outcome of this case will require the application of laws of different states.

### B. *Contract Claims*

According to the *Duncan* standard, the Court must consider the contacts each jurisdiction had with the contract which is the subject matter of this lawsuit. *Id.* When examining the contact that a jurisdiction has with a transaction, a number of factors are considered: the place of contracting; the place of negotiation of the contract; the place of performance of the contract; and, the domicile or residence of the parties to the transaction. Restatement (Second) of Conflict of Laws § 188.

■ In this case, several factors mitigate strongly in favor of the application of California law to McClure's contract claims. Contract negotiations for the purchase of Foscarini occurred in California. If the alleged agreement was ever reached between McClure and Duggan, the deal would have been finalized in California. It is undisputed that if Foscarini was to be delivered to McClure, delivery was to take place in California. McClure insisted that Foscarini be examined by a veterinarian in California. Both Duggan and McClure's trainer, Marikian, are California residents. Efforts to procure insurance for Foscarini occurred in California through a local agent. These facts convince the Court that California is the jurisdiction with the most significant relationship to the alleged contract. Thus, California law will be applied when determining McClure's contract claims.[1]

### 1. The Statute of Frauds

■ No dispute exists concerning the sales price for Foscarini. Duggan offered the horse for sale for $600,000. Thus the alleged sale of Foscarini to McClure is subject to the statute of frauds requirement set forth in section 2201(1) of the California Commercial Code ("UCC"). *See, e.g., Scott v. Hjelm*, 188 Mont. 375, 613 P.2d 1385 (1980) (UCC held to specifically apply to the sale of horses). Section 2201(1) provides:

Except as otherwise provided in this section, a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not

enforceable under this paragraph beyond the quantity of goods shown in such writing.

Cal.Com.Code 2201(1) (West 1964). To comply with this statutory provision, the memorandum must first evidence a contract for the sale of goods and second must be signed by the party to be charged or his authorized agent.

■ McClure submits two documents into summary judgment evidence to support his claim that sufficient writings exist to satisfy the statute of frauds: (1) the Application for Livestock Insurance and (2) the Order for Livestock Insurance. Both of these documents were prepared by Rowan-Wilson Insurance Services. The sufficiency of these writings is examined below.

The Application for Livestock Insurance recites Foscarini's name, its breed and date of birth, the horse's sire and dam, the intended use of the animal, the purchase price, and a five-percent premium of $30,000. The applicant is designated as "McClure, Douglas, Richard Duggan, Agent." At the bottom of the document, the name "Richard Duggan, by L.R." appears. It is undisputed that Duggan did not sign this document. Rather the insurance agent, Louis Rowan, signed Duggan's name placing his own initials along side the signature.

The Order for Livestock Insurance contains basically the same information. It, too, indicates that Duggan is acting as McClure's agent. McClure relies heavily upon language contained in the Order Form to substantiate his assertion that a writing exists "sufficient to indicate that a contract for sale has been made...." Cal. Com.Code § 2201(1) (West 1964). The Order form in a section entitled "remarks" states: "Dr. Greenwood from Ireland has flown over to X-ray and vet. check the

---

**1.** The choice-of-law question whether the Uniform Commercial Code as adopted in Texas or California applies to McClure's breach of contract claim does not preclude summary judgment since the statute of frauds provisions in issue here are identical in both Texas and California. *Compare* Tex.Bus. & Com.Code Ann. § 2.201(a) (Vernon 1968) (*with* Cal.Com.Code

§ 2201(1) (West 1964)). Since the law of the relevant jurisdictions is essentially the same, the choice-of-law question presents little difficulty. Even if significant differences in state law existed, the record in this respect is sufficiently developed to enable the court to properly determine which jurisdiction's law applies.

horse who has been passed by him. However, McClure will now [sic] take ownership until Bishop has okayed him upon arrival here." The Order form is not signed.

The Order and Application for Livestock Insurance fail to satisfy the written memorandum requirement of the statute of frauds as a matter of law. In order to satisfy the statute of frauds, a memorandum must indicate that a contract *"has been made"* between the parties. Cal. Com.Code § 2201(1) (West 1964) (emphasis added). UCC commentators Duesenberg and King observe:

> For a writing to satisfy the test of a memorandum, it must first be confirmatory of an oral agreement. If it does not evidence a contract which has already come into being, it is not a memorandum of an agreement and cannot therefore meet the Code test of indicating "that a contract for sale *has been* made."

Duesenberg and King, Sales and Bulk Transfers under the Uniform Commercial Code, § 2.04[2] (1985) (emphasis original).

Neither the Order nor the Application for Livestock Insurance forms, considered individually or together, contain any reference to an agreement or acceptance of an offer of sale, nor any other language which could conceivably indicate that a contract for the sale of Foscarini had been consummated. The statement typed in the "remarks" section of the Order form is not dispositive. The last sentence of the statement, referring to ownership, does not indicate that an agreement had been reached. Rather, it is an unintelligible, ungrammatical expression. The statement refers only to which party would have responsibility for insurance on the horse *in the event* that Duggan and McClure reached an agreement. These documents indiate nothing more than mere negotiations between the parties for the possible sale of Foscarini. Perhaps, too, they indicate that some step had been taken toward reaching an agreement. But these documents do not establish that a "contract for sale [had] been made." Cal. Com.Code § 2201(1) West 1964).

■ More importantly, the Order and Application forms do not meet the second requirement of the statute of frauds: the writing must be *"signed* by the party against whom enforcement is sought or his authorized agent or broker...." Cal.Com. Code § 2201(1) (West 1964) (emphasis added). It is undisputed that Duggan did not sign either document. The only evidence produced by McClure regarding the preparation of these documents is that they were prepared by an employee of Rowan for the purpose of insuring Foscarini. Both Duggan and McClure contacted the Rowan insurance agency. The only authority given Rowan and his insurance agency by either Duggan or McClure was to seek and obtain insurance on Foscarini. Neither Rowan nor any of his employees had authority to bind either Duggan or McClure to a contract for the sale of Foscarini. It is preposterous to contend that an independent insurance agent, acting on behalf of both parties to obtain insurance, could bind one of those parties to a contract for the sale of a $600,000 thoroughbred race horse.

## 2. Proof of the Memorandum and Signature Requirements

■ When ruling upon a motion for summary judgment, the trial court must view the evidence presented through the "prism" of the evidentiary standard and burden of proof imposed upon the parties by the underlying substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). McClure has the burden of producing evidence—evidence that presents a genuine issue for trial—that the statute of frauds is satisfied by a sufficient written memorandum. *See, e.g., Martco, Inc. v. Doran Chevrolet, Inc.*, 632 S.W.2d 927, 929 (Tex.App.—Dallas 1982, no writ). Duggan, as the summary judgment movant, is not required to submit evidence which negates the opposing party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The Movant discharges his burden of proof by pointing out the absence of such evidence. *Id.*, 477 U.S. at 2554.

Duggan has met this burden of proof. He has successfully shown that McClure

has produced no evidence raising a genuine issue of fact as to the existence of a sufficient memorandum signed by Duggan or his authorized agent indicating that a contract has been made with McClure for the sale of Foscarini. Once Duggan made this showing, McClure was required to produce significant probative evidence to support his contract claim. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968); *Joe Regueia, Inc. v. American Distilling Co., Inc.*, 642 F.2d 826, 829 (5th Cir.1981). To satisfy the memorandum and signature requirements of the statute of frauds, McClure submits only the Application and Order for Livestock Insurance forms. Other courts have readily held that an application for, or even the purchase of, insurance in connection with a related transaction is insufficient to indicate that a contract for sale has been made between the parties.

In *J.B. Oakley v. J.D. Little, Sr.*, 49 N.C.App. 650, 272 S.E.2d 370 (1980), the plaintiff alleged that the defendant agreed to purchase a certain amount of stock from a third party and, in turn, sell a portion of this newly acquired stock to the plaintiff. As payment for the stock, plaintiff contended that he agreed to execute a promissory note to the defendant and to secure this note with a second deed of trust on his home and a pledge of the acquired stock. At the defendant's request, the plaintiff purchased term life insurance on his own life to provide further security on the note. The plaintiff was listed in the policy as the insured, and the defendant was the designated beneficiary. The signatures of both the plaintiff and the defendant appeared on the policy.

The plaintiff in *J.B. Oakley* contended that two documents satisfied the written memorandum requirement of the statute of frauds. One of the documents consisted of two pages of notes that the defendant allegedly gave the plaintiff during a discussion of the proposed transaction. The notes were entitled "Outline of Proposed Sale." The notes disclosed many of the important terms of the proposed sale, including the price and quantity. They were not, however, signed by the defendant. The second document offered by the plaintiff to meet the written memorandum requirement was the life insurance policy he had taken out on his own life.

The North Carolina Court of Appeals held that these two exhibits were insufficient to indicate that a contract for the sale of the stock had been made between the parties. The Court pointed out that although the statute of frauds does not require a writing which embodies all of the essential and complete terms of a contract, "it does require some writing sufficient to indicate that a definite contract for the sale of goods has been made. Where writings only represent negotiations for agreements to be made in the future the courts have held under UCC § 2–201 that they were not binding contracts." *J.B. Oakley*, 272 S.E.2d at 373. Addressing the insurance policy in particular, the court declared that:

> The insurance policy simply shows that some step was taken toward agreement. It does not show that plaintiff and defendant had entered into a binding contract. Protective measures such as taking out term insurance on the life of a debtor may often be taken by a noteholder prior to a final agreement on the transaction.

*Id.* The Court in *J.B. Oakley* concluded that the writing whether considered alone or together evidenced nothing more than preliminary negotiations. *See also In Re Flying W. Airways, Inc.*, 341 F.Supp. 26 (D.Pa.1972) (agreement to purchase two aircraft not taken out of statute of frauds despite the fact that the party to be charged obtained insurance coverage for the aircraft and advanced premiums).

In this case, McClure, like the plaintiff in *J.B. Oakley*, has failed to submit "significant probative evidence" which satisfies the written memorandum and signature requirements of the statute of frauds. *See Cities Service Co.*, 391 U.S. at 290, 88 S.Ct. at 1590; *Joe Requeia, Inc.*, 642 F.2d at 829. The Application and Order for Livestock Insurance forms prepared by Rowan Insurance Services do not indicate that a contract for the sale of Foscarini had been

made. Neither document was signed by Duggan or an agent authorized to bind Duggan to a contract for the sale of Foscarini to McClure. Even when viewed in the light most favorable to the nonmovant, McClure, *Kennett-Murray Corp. v. Bone,* 622 F.2d 887, 892 (5th Cir.1980), these documents evidence nothing more than mere negotiations between the parties for the possible sale of Foscarini. To avoid summary judgment, McClure was required to meet Duggan's affidavits with opposing ones setting forth specific facts which show that a genuine issue exists for trial. *See Gossett v. Du-Ra-Kel Corp.,* 569 F.2d 869, 872 (5th Cir.1978).

It is undisputed that that Order for Livestock Insurance was unsigned. The Application for Livestock Insurance contains only Duggan's name signed by an unidentified person in the employ of Rowan Insurance Services. No probative evidence has been presented showing that Rowan Insurance Services was an agent authorized to bind Duggan to a contract for the sale of a $600,000 race horse. The Application and Order forms, read as a whole or individually, fail to establish that a contract for sale of Foscarini had been made.

The above facts, coupled with McClure's lack of significant probative evidence, convince the Court that no rational jury could find that the Application and Order for Livestock Insurance forms satisfy the memorandum and signature requirements of the statute of frauds. *See* Cal.Com. Code § 2201(1) (West 1964).

 Therefore, no genuine issue of material fact exist as to McClure's breach of contract claim, and Duggan is entitled to summary judgment as a matter of law. Because the alleged oral agreement between Duggan and McClure does not satisfy the statute of frauds and is therefore unenforceable, McClure's claims for breach of expressed and implied warranties are likewise barred as a matter of law. Similarly, the lack of an enforceable oral agreement bars McClure's claim for breach of an implied covenant of good faith and fair dealing.

### C. Fraud/DTPA Claim

 McClure's claim of fraud and those arising under Texas' Deceptive Trade Practice Act ("DTPA") all relate to telephone conversations made by Duggan to McClure. McClure submits these conversations separate and apart from the contract negotiations which occurred in California. The fraudulent or deceptive statements which McClure alleges Duggan made during the course of these telephone conversations occurred in Texas. Matters of substantive law are controlled by the laws of the state with the most significant relationship to that particular substantive law issue. *Duncan v. Cessna,* 665 S.W.2d 414, 421 (Tex.1984). Since the telephone calls were made by Duggan to McClure who was located in Texas, the Court will apply Texas law to McClure's claims of fraud and DTPA violations in accordance with standard set forth in *Duncan.*[2]

#### 1. The Tort Claim of Fraud

McClure bases his fraud claim upon the misrepresentation allegedly made by Duggan that "the horse [Foscarini] will not vet." McClure's Complaint reads:

---

**2.** The parties do not contest the application of Texas law to McClure's fraud and DTPA violation claims. Indeed, their formal briefs cite no other authority. It is well settled in Texas that —absent an express contractual provision with a valid choice of law clause—a court will not enforce rights which contravene the public policy of the State of Texas. *See Gutierrez v. Collins,* 583 S.W.2d 312 (Tex.1979); *Building & Loan Assn. v. Griffin,* 90 Tex. 480, 39 S.W. 656 (1897); *Tirado v. Tirado,* 357 S.W.2d 468 (Tex. Civ.App.—Texarkana 1962, writ dism'd w.o.j.). In light of the public policy under the DTPA and the efforts made by the State to protect its citizens in consumer transactions, Texas law is to be applied to McClure's theories of recovery based upon fraud and the DTPA.

The application of Texas or California law is of little consequence to McClure's fraud claim. Both Texas and California law recognize a cause of action for fraudulent deceit. Cal.Civ.Code § 1709 (West 1985). *See also Crail v. Blakely,* 8 Cal.3d 744, 106 Cal.Rptr. 187, 505 P.2d 1027 (1973) (statute of frauds should not be used to enable contracting party to take advantage of his wrongdoing and thus produce an unjust result).

Defendant [Duggan] made a phone call into the state of Texas and represented to the plaintiff [McClure] that Foscarini could not pass the appropriate veterinary examinations and that plaintiff should therefore not proceed with the purchase. This statement was false at the time it was made.... In reliance on the defendant's false statement the plaintiff failed to pursue his rights under the contract....

Plaintiff's First Amended Complaint at pp. 2–3. Duggan denies making the alleged misrepresentation.

 Summary judgment standards require only the consideration of those factual disputes which might affect the outcome of the lawsuit. *Phillips Oil Co. v. OKC Corp.*, 812 F.2d 265, 272–73 (5th Cir. 1987). Since a material misrepresentation is an important element of the tort of fraud, *Mumphord v. First Victoria National Bank*, 605 S.W.2d 701, 704–04 (Tex. Civ.App.—Corpus Christi 1980, no writ), it must be considered when determining Duggan's entitlement to summary judgment. Generally, the existence of a fact issue which is material, disputed, and supported by an adequate affidavit constitutes a "genuine issue for trial" and therefore precludes summary judgment. *Phillips Oil Co.*, 812 F.2d at 272–73.

 Thus, for the purposes of this Motion, the Court will assume *arguendo* that Duggan made the statement "the horse will not vet." The Court will also assume for the purposes of this motion that the content of the statement was false; that is, if a veterinarian examination had been performed on Foscarini, the horse would have been approved. Duggan contends that even if the alleged misrepresentation was made, McClure's action is in essence based upon an unenforceable oral agreement, and therefore the statute of frauds precludes his tort claim. Although the question is close, an examination of Texas law reveals that McClure's fraud claim is not barred by the statute of frauds as a matter of law.

Duggan cites two opinions of the Texas Courts of Civil Appeals in support of his contention that no action in tort may be based upon a contract declared unenforceable by the statute of frauds.

In *Wade v. State National Bank*, 379 S.W.2d 717, 720 (Tex.Civ.App.—El Paso 1964, writ ref'd n.r.e.), suspicious circumstances surrounded the death of the plaintiff's father. In exchange for the plaintiff's forbearance from investigating the circumstances of her father's death, the deceased made an oral promise to leave her estate, including real property, to the plaintiff. The deceased executed two holographic wills to that effect; however, both were later revoked. The plaintiff brought suit against the deceased's estate to recover the "difference between what she received and what she would have received but for such fraud." The Court of Civil Appeals held that an action for fraud and misrepresentation could not be maintained where it was premised upon the breach of an oral promise rendered unenforceable by the statute of frauds. *Id.* at 720. The court concluded:

[A]s a matter of law, the contract relied on by appellant is unenforceable. We fail to see how there could be any recovery for fraud involving the breach of an unenforceable contract. To hold otherwise would be to create an anomoly, and allow one to do indirectly what he could not by law do directly.

*Id.* Similarly, after disregarding the form of the plaintiff's claim and examining its substance, the San Antonio Court of Civil Appeals held in *Collins v. McCombs*, 511 S.W.2d 745, 747 (Tex.Civ.App.—San Antonio 1974, writ ref'd, n.r.e.) that an unenforceable oral agreement could not be "cast in language sounding in tort" in order to indirectly circumvent the statute of frauds.

In *Collins*, the plaintiff and defendant were joint venturers. They operated a train ride in an amusement park. The defendant capitalized the venture with an initial investment of $100,000. Plaintiff actively managed the business and received a $1,000 monthly salary. The plaintiff and defendant orally agreed that their interests in the business would be divided 60 percent and 40 percent respectively. The oral agreement provided that before the plain-

tiff would be entitled to share in the business profits, the defendant would recover his initial investment during the first three years of the enterprise. Plaintiff managed the train operation for three years and then, according to the oral agreement, requested his portion of the profits. The defendant refused to comply with the plaintiff's request and stated that it was never his intention to allocate a share of the business interest to the plaintiff. Plaintiff sought recovery of 40 percent of the value of the business and for his share of future of profits. The trial court granted the defendant's motion for summary judgment, and the plaintiff appealed. The question before the Court of Civil Appeals was whether a suit sounding in fraud could be maintained when it was based upon a false oral promise which could not be performed within one year. The Court concluded that such a suit could not be maintained. It held:

> [t]he judicial disregard of the statute should be limited to situations in which *the essence of the action truly sounds in tort.* Where plaintiff, although casting his complaint in the form of a cause of action for fraud, is attempting to recover damages for the breach of the promise, it is clear that he is, in effect, attempting to enforce the oral agreement. Where, as here, plaintiff is seeking to recover what he would have gained had the promise been perfomed, [it] is evident that the gist of his cause of action is the breach of the unenforceable promise.

*Collins,* 511 S.W.2d at 745 (emphasis added). The *Wade* and *Collins* decisions stand for the proposition that an unenforceable oral agreement cannot be the sole basis for an action sounding in fraud. When an oral agreement is rendered unenforceable by the statute of frauds, a purchaser cannot sustain an action for fraud by merely alleging that the seller made an oral promise without the intention of performing it. *Caplan v. Roberts,* 506 F.2d 1039, 1041 (9th Cir.1974).

 But Duggan's reliance upon these cases is misplaced. The allegations contained in McClure's Complaint demonstrate that McClure's fraud claim is not based upon false oral promises but upon factual misrepresentations which were made collateral to the unenforceable agreement. A review of Texas law indicates that an important distinction must be made before it is summarily concluded that McClure has disguised his unenforceable contract claim in the form of a tort action. The distinction is this: If the alleged fraudulent misrepresentations were purely promissory, then a tort claim is barred by the statute of frauds; if the representations were *factual,* however, the plaintiff may seek recovery under a tort theory. This distinction reconciles the *Wade* and *Collins* decisions best with the holding of the Texas Supreme Court in the opinion discussed below. See *Hastings v. Houston Shell and Concrete,* 596 S.W.2d 142 (Tex.Civ. App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.) (apparent disagreement exists among Texas courts whether the statute of frauds is a defense to the tort of fraud and misrepresentation.)

In *Sibley v. Southland Life Insurance Co.,* 36 S.W.2d 145 (Tex.1931), Sibley was both a stockholder and an officer of the Codefendant Kern Lumber Company. Kern exchanged twenty-two houses and lots for land owned by the insurance company. Sibley falsely represented that each of the twenty-two houses was improved with a brick veneer. Although the construction of some of these houses was incomplete at the time Sibley made the representation, he promised that all work would be completed. Sibley pointed out to the insurance company twenty-two houses with brick veneer and represented those as the ones being offered for exchange. Among those pointed out, however, was a brick veneer house which Sibley represented as being constructed on lot No. 7. The house was in fact located on lot No. 6; lot No. 7 was vacant. The insurance company brought suit and, after a jury trial, obtained a judgment for the cost of completing the construction on the unfinished houses and for the difference in value between lots No. 6 and 7. Sibley appealed and contended that he could only be sec-

ondarily liable for the failure of Kern to complete the houses. Sibley reasoned that since his representations were oral, the statute of frauds barred an action which sought their enforcement.

The Texas Supreme Court disagreed. It rejected Sibley's contention, stating that since the action was grounded in tort and not in contract the responsibility for the tort committed was not affected by the fact that the false promise was made orally. The plaintiff's action in *Sibley* was not based upon the defendant's failure to convey the land but rather upon the representations made collateral to the purchase contract. *See Keriotis v. Lombardo Rental Trust,* 607 S.W.2d 44, 46 (Tex.Civ.App.—Beaumont, 1980, writ ref'd n.r.e) (plaintiff in *Sibley* did not premise enforcement of principal agreement upon collateral promise). Since Sibley's misrepresentations were factual and made apart from any promise to remain secondarily liable, the Texas Supreme Court concluded that the statute of frauds was not a defense to the tort action of fraud.

Here, in the instant case, Duggan's alleged misrepresentations are separate and aside from the underlying oral agreement to sell Foscarini. If all McClure alleged was that Duggan had no intention of performing his oral promise to sell Foscarini when the promise was made, then in accordance with the holdings of *Wade* and *Collins,* McClure's fraud claim would be barred by the statute of frauds as a matter of law. But McClure alleges more than just an underlying intent not to perform an unenforceable oral agreement. McClure alleges that Duggan made a misrepresentation independent of the unenforceable oral agreement. McClure alleges that Duggan stated Foscarini would not "vet," when in fact the horse was capable of passing a veterinarian examination. Such facts as whether Duggan made this statement, whether it was true, or whether negotiations had progressed to such a point that the statement could be considered a condition precedent to the sale of Foscarini are all heavily disputed. Disputed facts when considered upon a motion for summary judgment must be resolved in the nonmov-

ant's favor. *Kennett-Murray Corp. v. Bone,* 622 F.2d 887, 892 (5th Cir.1980). If Duggan made the alleged statement that Foscarini would not "vet" when indeed the horse would, then this misrepresentation is material to McClure's action in fraud. Since these facts are disputed and material to McClure's cause of action, a genuine issue for trial exists. *Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis,* 799 F.2d 218, 222 (5th Cir.1986). This genuine issue of material fact precludes summary judgment on McClure's fraud claim as a matter of law. Fed.R.Civ.P. 56(c).

■ Duggan further asserts that McClure is seeking contractual damages and not damages recoverable for fraud. Duggan concludes that the nature of the damages sought renders McClure's fraud claim one sounding in contract rather than tort, to which the statute of frauds would be applicable. The Court disagrees. The general measure of damages in tort actions based on fraud is that the defrauded party is entitled to recover the pecuniary loss suffered as a direct and proximate cause of the fraud. *See e.g., Duvall County Ranch Co. v. Wooldridge,* 674 S.W.2d 332 (Tex. App.—Austin 1984, no writ); *State National Bank of El Paso v. Farah Manufacturing Co., Inc.,* 678 S.W.2d 661 (Tex.App.—El Paso 1984, writ dism'd). The pecuniary loss is measured by the difference between the value of the thing received and the purchase price. *See Traylor v. Gray,* 547 S.W.2d 644, 656 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n.r.e.). This measure of damages, however, is only applicable when the fraudulent representation has induced a party to enter into a transaction involving the transfer of something of value. When the defendant's fraudulent conduct does not involve the transfer of property, the plaintiff necessarily proves his claim by proving special or consequential damages. P. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on Torts* (5th ed. 1984).

■ In the instant case, Duggan's alleged fraudulent representation did not in-

duce McClure to enter into a transaction, rather it induced him *to refrain from action*. More specifically, if Duggan fraudulently stated that Foscarini did not pass the veterinary examination, McClure would have had no reason to proceed with the purchase of the horse. Since there was no transfer of value between the parties, one measure of damages is proof of consequential or special damages. The damages sought by McClure in his First Amended Complaint include damages in excess of $100,000 as special and/or consequential damages. As a consequence of not purchasing the horse, McClure alleges in his supporting Affidavit that he has suffered the loss of race winnings which have accrued to the owners of Foscarini subsequent to the horse's arrival in the United States. Duggan's contention that the special or consequential tort damages sought by McClure are actually contractual damages which render McClure's fraud claim one sounding in contract is thus without merit.[3] Similarly lacking merit is Duggan's allegation that since no transfer of the horse's ownership occurred, McClure did not rely on the alleged fraudulent misrepresentation. If Duggan made the misrepresentation—and for summary judgment purposes the Court assumes he did—then McClure's allegation that the misrepresentation induced him to refrain from purchasing the horse is sufficient to establish detrimental reliance. Therefore, Duggan is not entitled to summary judgment on these points.

### 2. The DPTA Violations

■ The Court has previously concluded that McClure has sufficiently plead an

action sounding in the common law tort of fraud. In reaching this conclusion, the Court found that McClure's fraud claim was supported by alleged acts independent of any underlying oral agreement between Duggan and McClure. No surreptitious attempt was made to indirectly recast a contract claim in the terms of tort. For these reasons, the Court also concludes that Duggan is not entitled to summary judgment as to McClure's DTPA claims. The case of *Lawson v. Commercial Credit Business Loans*, 690 S.W.2d 679 (Tex.App. —Eastland 1985, no writ) exemplifies this point.

In *Lawson*, plaintiff sought recovery for breach of contract and for DTPA violations for false and misleading statements. The plaintiff and defendant had entered into an oral agreement whereby the plaintiff agreed to purchase repossessed jewelry from the defendant. The defendant breached the agreement when it found a bidder who would pay more money for the jewelry. The defendant moved for summary judgment, arguing that the agreement was unenforceable because of the statute of frauds. The defendant cited *Keriotis v. Lombardo Rental Trust*, 607 S.W.2d 44 (Tex.Civ.App.—Beaumont 1980, writ ref'd n.r.e.), for the proposition the plaintiff's DTPA claim for misrepresentation was also barred by the Statute of Frauds.

The court in *Lawson* pointed out the same distinguishing factor present in the instant case when explaining why *Keriotis* was not controlling. In *Lawson*, as here, the alleged misrepresentations were factual, not promissory. In *Keriotis*, the court when refusing to consider the plaintiff's DTPA claim readily admitted that "no at-

---

**3.** Duggan cites *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex.1986), for the proposition that an action sounds in contract when the only alleged injury is an economic loss resulting from the contract's breach. The Court does not disagree, but notes that the *Jim Walter* decision stands for little more than in such a situation *exemplary* damages are unwarranted. *Id.* at 618. In this cause, however, McClure has asserted more than an economic injury flowing from Duggan's alleged breach of an unenforceable oral agreement. McClure contends that he sustained injury from his reliance on Duggan's alleged statement that Foscarini did not pass the

veterinarian examination. This allegation contained in McClure's Affidavit constitutes more than a "scintilla of evidence" submitted to support McClure's claim for fraud damages. *Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis*, 799 F.2d 218, 223 (5th Cir.1986). There has been limited discovery in this case. Based upon the "bare bones" pleadings and affidavits, the Court is not prepared to say that McClure has produced no "significant probative evidence" of special damages resulting from Duggan's alleged fraudulent misrepresentations. *Joe Regueira, Inc. v. American Distilling Company, Inc.*, 642 F.2d 826, 829 (5th Cir.1981).

tempt is made to establish any acts other than the promise to convey and the failure to do so." *Lawson,* 690 S.W.2d at 681 (quoting *Keriotis,* 607 S.W.2d at 46). The court in *Lawson* continues:

> The summary judgment proof in this case raises the issue that Commercial Credit did more than merely fail to perform under an oral agreement. It would appear from Lawson's deposition that while Commercial Credit's employees shook hands with Lawson to signify their agreement, took Lawson's check as a deposit, promised him that he could take possession of the jewelry after five days unless the debtor paid off his note, and assured him that they were not "shopping his bid," Commercial Credit was in fact doing that very thing. Moreover, when Commercial Credit found a bidder who would pay $5,000 more than Lawson, its employee wrote Lawson a letter stating that the debtor had reclaimed the jewelry. This was a misrepresentation, for the summary judgment proof shows that the jewelry was sold to a third party who outbid Lawson after Commercial Credit had accepted Lawson's offer.

*Id.* at 681. The court concluded that proof of these acts independent of the unenforceable oral contract in issue precluded the statute of frauds from insulating the defendant from liability under the DTPA. *Id.*

In the instant case, McClure has alleged that Duggan made a factual misrepresentation independent of the alleged unenforceable agreement to sell Foscarini. The alleged misrepresentation is that the horse would not "vet." This alleged false oral statement is disconnected from the underlying contract and creates a genuine issue of fact material as to Duggan's DTPA claims. Since the facts of the instant case are on point with those of *Lawson,* the statute of frauds will not, as a matter of law, insulate Duggan from liability for his alleged fraudulent misrepresentations under the DTPA. As the court in *Lawson* stated, the question of whether Duggan did more than merely fail to perform under the agreement is a fact question for the jury. *Id.* at 681. Thus, McClure's DTPA claim

for misrepresentation is not barred by the statute of frauds.

**D. Conversion and Breach of Fiduciary Duty Claims**

■ McClure's cause of action for conversion against Duggan is barred, as a matter of law, because the evidence in this case establishes that McClure never had title to or an immediate right to possession of Foscarini. This Court has found that the oral agreement under which McClure asserts his title to Foscarini is unenforceable as a matter of law. As the Fifth Circuit held in *Mack v. Newton,* 737 F.2d 1343, 1355 (5th Cir.1984):

> Under Texas law, it is well settled that in order to recover on a theory of conversion, one must at the time of the conversion either have some character of ownership interest in the specific property converted or be in legal possession of it or then [be] entitled to its possession.

*See also Catania v. Garage De Le Paix, Inc.,* 542 S.W.2d 239, 242 (Tex.Civ.App.—Tyler 1976, writ ref'd n.r.e.) ("A plaintiff who has not shown title or some other right to possession of the property allegedly converted may not maintain a suit in conversion.") *Lone Star Beer, Inc. v. Republic National Bank of Dallas,* 508 S.W. 2d 686, 687 (Tex.Civ.App.—Dallas 1974, no writ) (" 'In order to recover on a theory of conversion, it is necessary that ... [the plaintiff] allege and prove one of three things, that being, that it is the owner of the property converted or that it had legal possession of the property so taken or that it is entitled to possession.' ") (quoting with approval *Lone Star Beer, Inc. v. First National Bank of Odessa,* 468 S.W.2d 930, 934 (Tex.Civ.App.—El Paso 1971, no writ)). Thus, McClure's conversion claim cannot be maintained as a matter of law.

■ McClure has also failed to produce any evidence to support his claim for breach of fiduciary duty against Duggan. The only suggestion made by McClure that any basis in law or fact exists to support his claim is the assertion in McClure's Brief that he "was justified in believing that Duggan would act in McClure's interest

because McClure trusted Duggan based on the parties' previous business dealings." No summary judgment evidence has been produced to support the conclusion that a confidential relationship existed between McClure and Duggan. The affidavits disclose only one other prior transaction between McClure and Duggan. It occurred in 1983 and was conducted at arms-length. Absent a showing of a confidential relationship, McClure's breach of fiduciary duty is thus barred as a matter of law. *See Harris v. Sentry Title Co., Inc.*, 727 F.2d 1368 (5th Cir.1984) (critical requirement of breach of fiduciary duty is a confidential relationship between the parties prior to and apart from the transaction in question); *Atrium v. Dallas Market Center Co.*, 696 S.W.2d 197, 200 (Tex.App.—Dallas 1985, writ ref'd n.r.e) (more than subjective trust is required to transform an arms-length transaction into a fiduciary relationship to circumvent the statute of frauds).

E. Conclusion

In sum, McClure's breach of contract cause of action is unsupportable because McClure has failed to produce significant probative evidence which satisfies the written memorandum and signature requirements of the statute of frauds. Because the alleged oral agreement in issue here is unenforceable, McClure's claims of breach of express and implied warranties, including a breach of a convenant of good faith and fair dealing, likewise cannot be maintained as a matter of law.

McClure, however, has produced significant probative evidence of acts independent of the unenforceable oral agreement to support his claims of fraud and DTPA violations. Whether these representations occurred or whether they are true or false are genuinely disputed issues which, under the controlling substantive law, are material to the determination of McClure's right of recovery. Based upon the record currently before the Court, McClure may proceed upon his fraud and DTPA claims.

Because McClure has produced no significant probative evidence of essential elements necessary to support his conversion and breach of fiduciary duty claims, no genuine issue of fact exists for trial. Based upon the summary judgment evidence provided, no rational jury could find for the nonmovant, McClure, in regard to these claims.

## ORDER

For all of the above reasons, it is ORDERED that Defendant Duggan's Motion for Summary Judgment on Plaintiff McClure's alleged cause of action for breach of contract is GRANTED; this cause of action is DISMISSED with prejudice.

It is further ORDERED that Defendant Duggan's Motion for Summary Judgment on Plaintiff McClure's alleged causes of action for breach of express and implied warranties, including the breach of an implied convenant of good faith and fair-dealing, is GRANTED; these causes of action are DISMISSED with prejudice.

It is further ORDERED that Duggan's Motion for Summary Judgment on McClure's alleged causes of action for fraud and DTPA violations is DENIED.

It is further ORDERED that Duggan's Motion for Summary Judgment on McClure's alleged causes of action for conversion and breach of fiduciary duty is GRANTED; these causes of action are DISMISSED with prejudice.