Jose SAUCEDO, Appellant,

v.

RHEEM MANUFACTURING COMPANY and Jaime Loera, Appellees.

No. 04–96–00335–CV.

Court of Appeals of Texas, San Antonio.

March 18, 1998.

Order Granting Rehearing May 20, 1998.

Rehearing Overruled July 14, 1998.

Review Denied Oct. 15, 1998.

C.M. Zaffirini, Zaffirini & Castillo, Laredo, for appellant.

Xavier Rodriguez, W. Wendell Hall, Renee A. Forinash, Fulbright & Jaworski, L.L.P., San Antonio, Horace C. Hall, III, Hall, Quintanilla & Alarcon, L.C., Laredo, for appellee.

Before RICKHOFF, GREEN and JOHN G. HILL,[1] JJ.

## OPINION

JOHN G. HILL, Justice (Assigned).

Jose Saucedo appeals from a summary judgment that he take nothing in his claims against Rheem Manufacturing Company and Jaime Loera, the appellees. His cause of action was for breach of contract, promissory estoppel, fraud, defamation, and intentional infliction of emotional distress. He contends in a single point of error that the trial court erred by granting summary judgment.

We affirm in part and reverse and remand in part because we hold that the trial court erred in part by granting summary judgment for Rheem with respect to Saucedo's breach of contract claim but did not err in granting summary judgment that Saucedo take nothing as to Rheem and Loera with respect to Saucedo's other claims.

---

1. Assigned to this case by the Chief Justice of the Supreme Court of Texas.

## Factual and Procedural Background

Saucedo alleged that he was working as a maintenance manager for a company when he was hired by Rheem for the position of maintenance superintendent of its plant in Nuevo Laredo. He stated that he worked for Rheem from 1991 until Rheem terminated him in 1994. All of the causes of action alleged relate to that termination.

Loera asserts in his motion for summary judgment that: (1) Saucedo's claim against him for breach of contract must fail because there was no contract between him and Saucedo; (2) Saucedo's claim against him for promissory estoppel must fail because Saucedo, in response to interrogatories, states that the basis for his claim were promises made to him by someone else before he was hired to work for Rheem, whereas Loera was not employed by Rheem until a year after Saucedo had been working for Rheem; (3) Saucedo's claim against him for fraud must fail because the promises upon which the fraud claim are based were made by someone else; (4) Saucedo's claim against him for defamation for making the statement to Ms. Jo Staneland that Saucedo had been employed by Rheem as a "chief mechanic" rather than a "maintenance superintendent" must fail because there was no publication, because there are no special damages plead or provable, and because the alleged statement is not capable of a defamatory meaning as a matter of law.

In its original motion for summary judgment, Rheem asserts that: (1) Saucedo's claims for breach of contract, promissory estoppel, and fraud must fail because any promise relied upon by Saucedo was for employment for greater than one year and was not reduced to writing, in violation of the Texas Statute of Frauds, TEX. BUS. & COMM. CODE § 26.01 and (2) Saucedo's claim for defamation must fail because (a) there was no publication; (b) there are no special damages plead or provable; and (c) the statement upon which Saucedo bases his claim is not capable of a defamatory meaning as a matter of law.

In a second motion for summary judgment, Rheem contends that: (1) Saucedo's claims for breach of contract, fraud, and promissory estoppel are barred because of resume fraud on his part; (2) Saucedo's damages are limited to a one-year period, less mitigation, for any alleged breach of contract; and (3) Saucedo fails to establish two essential elements of his claims for fraud and promissory estoppel, (a) that any promise was not kept, or (b) that Saucedo relied to his detriment on any such promise.

Finally, in a third joint motion for summary judgment, Loera and Rheem urge that Saucedo fails to establish all the necessary elements of his claim for intentional infliction of emotional distress in that any behavior on the part of Loera or any other employee of Rheem was not extreme and outrageous conduct and that Saucedo fails to establish, as a matter of law, that he suffered severe distress.

In his response to Rheem's first motion for summary judgment, Saucedo asserts that his written employment agreement provided for an annual salary and that when he continued to be employed at the end of the first year, the contract extended for an additional year, so that his contract did not expire until July 15, 1995; and that the facts show that he met the elements of a claim for promissory estoppel and fraud. With respect to the defamation claim, Saucedo replied that "subsequent to the reference checks, Plaintiff has learned from Ms. Juliana Rodriguez, receptionist at Rheem's plant in Nuevo Laredo, that Mr. Loera gave her strict orders to refer all requests for references on Jose Saucedo to him."

In his response to Defendant Loera's motion for summary judgment, Saucedo notes that he has amended his petition so as to assert only claims for defamation and intentional infliction of emotional distress against Loera. He asserts that the defamation was made not only to Ms. Jo Staneland, but also to Margie Mitchell, Aero Box, RM Personnel, and anyone else who called in to request information about him.

In response to Rheem's second motion for summary judgment, Saucedo alleges that Rheem has admitted that he was terminated without cause and that it cannot later justify his termination on grounds that were not

made the basis of termination at the time of the discharge. He also indicates that Rheem did not rely on the alleged misrepresentations, that they were not material, and that it waived any complaints to the alleged misrepresentations.

With respect to the allegations of breach of contract, Saucedo alleges in his response to Rheem's second motion that his damages for the breach are his salary and benefits for the remainder of the year, less his earnings. He reiterates his assertion that he has established all of the elements of his claims for fraud and promissory estoppel.

In his response to the appellees' joint third motion for summary judgment, Saucedo contends that certain conduct by Loera did constitute outrageous conduct, or at least raises a fact question as to whether it constituted outrageous conduct. He also refers to certain testimony establishing that he suffers from a decompensating schizophrenic disorder or borderline personality disorder as a result of his problems with Rheem and Loera.

As previously noted, the trial court granted the appellees' summary judgment with respect to all of Saucedo's claims.

## Discussion

The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548 (Tex.1985). In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true; and every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor. *Id.* at 548–49. Inasmuch as this motion for summary judgment was filed prior to September 1, 1997, it is governed by Rule 166a of the Texas Rules of Civil Procedure prior to its amendment effective on September 1, 1997. Texas Supreme Court, *Final Approval of Revisions to the Texas Rules of Civil Procedure*, Misc. Docket No. 97–9139, (August 15, 1997).

## 1. Defamation

We will first consider whether Loera and Rheem have established their claim that the summary judgment evidence establishes that Saucedo has no claim for defamation. Saucedo alleged in his petition that Rheem and Loera gave strict orders to Rheem employees that all inquiries regarding him were to be referred to Loera, who was to inform prospective employees that Saucedo was a "chief mechanic" instead of "maintenance supervisor," and that they could not give any information regarding Saucedo, leading the listener to believe there was something that they were unable to discuss or unwilling to tell the listener about Saucedo that the listener had to know.

As we have previously noted, both Rheem and Loera contend that Saucedo has no claim for defamation because there was no publication, because there are no special damages plead or provable, and because the alleged statement is not capable of a defamatory meaning as a matter of law. We have also noted that Saucedo responds that he had learned from Rheem's receptionist that Mr. Loera had given strict orders that all requests for references were to be referred to him. In construing Saucedo's responses as a whole, we construe this to mean that all requests for references were to be referred to Loera. He also asserts in his response that the defamation was not only made to Ms. Jo Staneland, but also to Margie Mitchell, Aero Box, RM Personnel, and anyone else who called in to request information concerning him.

The summary judgment evidence reflects that Margie Mitchell, a recruiter for Aero Box and Tom Garcia, testified in her deposition that when she called and talked to Rheem's personnel manager in Nuevo Laredo, he told her that they had been told not to give any information about Saucedo. He did not say that was company policy as to all job inquiries. She said that if there is no lawsuit pending and she calls for a reference and is told that the party she is calling has been told not to say anything about that person, it probably would leave a question in her mind as to that person's qualifications or back-

ground and would therefore hurt the applicant.

Saucedo presented the affidavit of Jo Staneland in opposition to the motions for summary judgment. Attached to Staneland's affidavit is her statement concerning a conversation she had with Loera, Rheem's plant manager. She says that Saucedo had asked her to conduct a reference check on himself because of circumstances that pointed towards a bad reference being given out at Rheem. She indicates that when she called Rheem her call was directed to Loera, who informed her that he would be able to give her a reference check on Saucedo. According to Staneland, when she asked Loera for Saucedo's title, he said "chief mechanic." When she asked him whether he could comment on Saucedo's work ability, he hesitated before saying that he could not. She states that he indicated that he could also not comment as to whether Saucedo was a good employee. She indicates that Loera stated that it was company policy not to give references on former employees.

Staneland says in her statement that she called Saucedo and told him of her conversation with Loera. She speculates that Saucedo contacted the Human Resources manager and informed him of the conversation that she had with Loera. She states that Loera called her the next day and asked her if she had taken his wording to be a "bad reference." She said that she told him that she had and that since she had been a recruiter for a year, and since reference checking is part of her job duties, that she knew the difference between a good and a bad reference. She also told him that she prided herself in being an astute judge of character and that it is her job to determine on the phone in very short order if the person is handing her a line or if the person is genuine. She says that she informed Loera that she did not think that she was mistaken about Saucedo. She indicates that Loera apologized and said that he was used to getting references on people, not giving them, and that it was indeed company policy not to give them. He said that Saucedo's title was "maintenance manager" and he was a very good employee. Finally, Staneland says that

Loera called back about an hour later, at which time he was most complimentary about Saucedo, saying that he was an outstanding candidate, and that he wished him all the best.

The summary judgment evidence shows that there was only one publication of anything possibly defamatory, and that publication was to Jo Staneland, who contacted Loera at the request of Saucedo. This court has previously held that if the publication of which the plaintiff complains was consented to, authorized, invited, or procured by the plaintiff, he cannot recover for injuries sustained by reason of the publication. *Smith v. Holley*, 827 S.W.2d 433, 436 (Tex.App.—San Antonio 1992, writ denied). Since this publication was invited and procured by Saucedo, he cannot recover for injuries sustained as a result of it.

Saucedo suggests that there was no evidence that he knew that Rheem or Loera would defame him if asked, so that any defamatory statement made to Jo Staneland would constitute a publication. Attached to Saucedo's affidavit in opposition to the motions for summary judgment is a memorandum prepared by Jo Staneland. In that memorandum, she states, "I was asked by Jose Saucedo to conduct a reference check on himself because of circumstances which pointed towards a 'bad reference' being given out at Rheem." We hold that this shows that Saucedo did consent to any defamation that might have been made to Jo Staneland.

Saucedo suggests that evidence that someone at Rheem told Margie Mitchell that they had been told not to give out information about Saucedo is evidence of the publication of a defamatory statement to someone other than Jo Staneland. He relies on the case of *Frank B. Hall & Co. v. Buck*, 678 S.W.2d 612, 617 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.), *cert. denied*, 472 U.S. 1009, 105 S.Ct. 2704, 86 L.Ed.2d 720 (1985). We find that case to be distinguishable. In that case someone with the employer agreed to talk about the employee, but when pressed for more information declined to comment and stated, "I can't go into it," and then said that he would not rehire the employee. *Id.* at 618. The Court

held that could be a defamatory statement. *Id.* at 619. In this case the Rheem employee who talked to Mitchell did not agree to discuss Saucedo and was not giving out any information about him. "The law imposes no duty on anyone to talk about a former employee." *American Medical Int'l, Inc. v. Giurintano*, 821 S.W.2d 331, 337 (Tex.App.—Houston [14th Dist.] 1991, no writ). We agree with Rheem that the mere refusal to talk about Saucedo as a matter of law does not constitute a defamation.

Saucedo suggests that the defamation was also published to Aero Box, RM Personnel, and any other person that called to request information about him. It appears that the only evidence of such a defamation is the mere fact that some of those companies may have made a reference check and then did not hire Saucedo. We do not believe that this is sufficient to show the publication of a defamatory statement.

One of the bases upon which Rheem moved and upon which the trial court granted Rheem's motion for summary judgment is that Saucedo's causes of action for breach of contract, fraud, and promissory estoppel are barred by resume fraud on the part of Saucedo. There is summary judgment evidence that Saucedo represented in his resume that: (1) he graduated in the top ten percent of his high school class; (2) he attended San Diego State College, earning 12 credit hours in business administration; (3) he attended Arizona State University, earning 12 credit hours in business administration; (4) he attended the University of Texas at El Paso, earning 60 credit hours in mechanical engineering; (5) he earned an associates degree in mid-management; (6) he completed four years of college; (7) he earned a 3.0 average in college; (8) he took 76 credit hours in mechanical engineering at El Paso Community College; and (9) he has a diploma from the University of Texas at El Paso.

The appellees have presented summary judgment evidence consisting of evidence of school records showing that: (1) Saucedo graduated from high school ranked 319th of 341 students; (2) Saucedo never attended San Diego State College or San Diego State University; (3) Saucedo never attended Arizona State University; (4) Saucedo never attended the University of Texas at El Paso; (5) Saucedo did not earn an associates degree at El Paso Community College or any of the other colleges or universities to which he refers in his resume; (6) of the colleges or universities mentioned in his resume, Saucedo only attended El Paso Community College, where he earned 75 credit hours; (7) Saucedo did not have a 3.0 grade point average at El Paso Community College; and (8) Saucedo completed no courses in mechanical engineering at El Paso Community College.

Saucedo presented his affidavit in opposition to the motions for summary judgment. In that affidavit he states that he attended each of the colleges and universities that are listed in his resume. He states that he does not understand why some are saying they do not have a record of him, but that he is attempting to find an explanation. He says that Betty Stockdale advised and guided him in the preparation of his resume and employment application, and that she is Rheem's employment agent. He described some buildings at each school where he took classes.

Even if Saucedo's statements are accepted as true, the appellees established by undisputed summary judgment evidence that Saucedo committed resume fraud with respect to his class standing and grade point average, the number of credit hours earned, degrees obtained, and the nature of classes taken.

What Rheem describes as resume fraud is described in the cases that it cites as the after-acquired evidence doctrine. In Texas, the doctrine has been employed in defense of claims brought for wrongful retaliation for the filing of workers' compensation claims. The doctrine has been approved by the Fifth District Court of Appeals, *see Jordan v. Johnson Controls, Inc.*, 881 S.W.2d 363, 369 (Tex.App.—Dallas 1994, writ denied), but rejected by the Ninth and Thirteenth Courts of Appeals, *see Mitchell v. John Wiesner, Inc.*, 923 S.W.2d 262, 264 (Tex.App.—Beaumont 1996, no writ); *Montiel v. Trico Technologies Corp.*, 941 S.W.2d 263, 265 (Tex.App.—Corpus Christi 1996), *aff'd*, 949 S.W.2d 308 (Tex. 1997). In affirming the judgment of the Thirteenth Court, the Texas Supreme Court

recently held that the doctrine does not serve to bar such claims but that it does serve under certain circumstances to bar the recovery of actual damages for the period after the employer discovers evidence of the employee's misconduct. *Trico Technologies Corp. v. Montiel,* 949 S.W.2d 308 (Tex.1997). However, the doctrine may have no application at all if the employer is aware of the fraud prior to termination, but does not terminate the employee on that basis. Regardless of whether Rheem knew of Saucedo's resume fraud prior to his termination, the doctrine, under the facts of this case, does not serve as a total bar to his claims.

## 2. Intentional Infliction of Emotional Distress

◼ We next consider the issue of whether the summary judgment evidence establishes as a matter of law that any conduct on the part of Loera or any other Rheem employee was not extreme or outrageous conduct that would give rise to a cause of action for the intentional infliction of emotional distress.

The elements of a claim for the intentional infliction of emotional distress are: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; and (3) the defendant's actions caused the plaintiff severe emotional distress. *Twyman v. Twyman,* 855 S.W.2d 619, 621 (Tex.1993).

Whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery is initially a question for the court. *Wornick Co. v. Casas,* 856 S.W.2d 732, 734 (Tex.1993); RESTATEMENT (SECOND) OF TORTS § 46 cmt. h. (1965). Outrageous conduct is that which goes beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society. *Wornick Co.,* 856 S.W.2d at 734; RESTATEMENT (SECOND) OF TORTS § 46 cmt. d.

There is summary judgment evidence that Loera frequently used the word "fuck" in conversations with Saucedo, including phrases like "You don't know what the fuck you're doing;" "You are all fucked up;" "I am going to fucking fire you;" and "Saucedo, once again you missed the fucking boat."

In his deposition, Saucedo testified that he had an employee who was working with chemicals at the plant in Mexico who had respiratory problems. Saucedo said that he told the employee to go to Social Security, a hospital in Mexico that provided services to the employees in the Mexican plant. He indicated that when Loera found out, he told the employee that if he went there he would fire him, and that if he needed medical treatment Rheem would pay for a private physician. Saucedo testified that Loera told him privately, "You know what this guy is trying to do? He's trying to get more money because he's working with dangerous chemicals." Saucedo also indicated Loera said, "And you're too stupid. You're not even a fucking manager to recognize this."

Saucedo recounted another incident in which he and other employees stayed after hours to repair a machine. He said that the next morning, while he was dozing at his desk, Loera took his picture and a week later confronted him with it and told him, "I can get your ass fired for this." He did not mention whether Loera knew he had been up all night.

Saucedo referred in his deposition to an incident in which an environmental official had wanted some testers for the stacks. Saucedo indicated that he had ordered the necessary materials but that they had not yet arrived. Saucedo said that at a conference with Loera and the environmental official, Loera had verbally insulted him in front of the official, saying, "I don't care. I don't want any excuses. You were supposed to get this done and you did not get it accomplished." Saucedo also indicated that Loera told him, "You're always looking for fucking excuses. You've always got an excuse for everything. I don't want to hear your fucking excuses anymore. You were supposed to get this thing done. You didn't get it done. I'm going to assign it to somebody else."

Saucedo testified that Loera would kick back or lose his requisitions for critical parts and then insult him when a machine broke down by saying, "It's all your fucking fault."

Saucedo said in his deposition that Loera gave out bad references, but gave no specific example.

Finally, Saucedo indicated in his deposition that Loera would call him at night. He gave one example of Loera calling him at 11:30 p.m. or midnight when he was already asleep to check to see if he had his beeper on. He said that Loera beeped him at night 20 to 30 times for no reason. He did not give times with respect to the other occasions.

"Insensitive or even rude behavior does not amount to outrageous behavior." *Mattix–Hill v. Reck*, 923 S.W.2d 596, 597 (Tex. 1996); *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex.1994). While Loera's conduct, if true, might be insensitive or rude, we agree with the trial court that it does not, as a matter of law, surpass all possible bounds of decency and is not utterly intolerable in a civilized society. Saucedo refers us to several examples of cases that discuss outrageous conduct, one from a federal court in Texas and the others from the courts of other states, all of which are referenced by the Texas Supreme Court in *Wornick Co.*, 856 S.W.2d at 735–36. We find those cases to be distinguishable. Most have to do with employers charging employees with criminal conduct and another has to do with vile, offensive racial slurs. We do not agree with Saucedo's conclusion that Loera's conduct equaled or exceeded the conduct discussed in those cases. Even if it did, we note that the Texas Supreme Court, while referring to those cases, did not adopt them as controlling in Texas. *Id.* at 736.

### 3. Breach of Contract, Promissory Estoppel, and Fraud

We next consider the issue of whether Saucedo's causes of action for breach of contract, promissory estoppel, and fraud against Rheem are barred by the Texas Statute of Frauds, TEX. BUS. & COM.CODE ANN. § 26.01 (Vernon 1987), because it was for employment greater than one year and was not reduced to writing.

Jose Saucedo presented an affidavit in opposition to Rheem's motion for summary judgment. In that affidavit he states that while employed as the maintenance manager for Findlay Industries, he was recruited for the position of maintenance superintendent for Rheem in Nuevo Laredo, Mexico. He said that John Vanderveldt, Rheem's Vice President for Maintenance Operations, offered him the position of maintenance superintendent, telling him that he was required to make a personal commitment of establishing deep roots with Rheem and that Rheem would in turn offer a stable and permanent position until retirement. Saucedo says that Vanderveldt promised him a stable and permanent position until retirement but did not tell him that Rheem had terminated many of its employees in the period from January 1, 1991, to May 31, 1991. He attaches a copy of the written confirmation of the offer and of his acceptance to his affidavit. The written confirmation makes no mention of the length of Saucedo's employment. It does indicate that he is to be paid a base salary of "$36,000 annually." Saucedo was to begin employment with Rheem on July 15, 1991. He says that he performed his duties very well until Rheem terminated him on September 20, 1994.

Section 26.01 of the Texas Business and Commerce Code, commonly called the statute of frauds, provides, among other things, that an agreement not capable of being performed within one year from the date of making the agreement must be in writing and signed by the person to be charged with the promise or agreement, or by someone lawfully authorized to sign for him. TEX. BUS. & COM.CODE ANN. § 26.01(b)(6). If Rheem promised Saucedo employment until retirement, it was not in writing and therefore is not enforceable under the terms of this section.

Texas, with some exceptions, follows the employment at will doctrine, under which employment for an indefinite term may be terminated at will and without cause. *Schroeder v. Texas Iron Works, Inc.*, 813 S.W.2d 483, 489 (Tex.1991). A verbal agreement for employment until retirement is unenforceable. *Id.*

As previously noted, the memorandum of the employment agreement between Rheem and Saucedo provides that he is to be

paid $36,000 annually. A hiring based upon an agreement of an annual salary limits in a meaningful and special way the employer's prerogative to discharge the employee during the dictated period of employment. *Winograd v. Willis*, 789 S.W.2d 307, 310 (Tex. App.—Houston [14th Dist.] 1990, writ denied); *Molnar v. Engels, Inc.*, 705 S.W.2d 224, 225 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.). Where, as here, the employment is for an annual salary, by its terms it could have been performed in one year and was therefore excused from the statute of frauds. *Winograd*, 789 S.W.2d at 311. If, at the expiration of a year the employee continues to perform his services, the contract impliedly renews itself for a period of one year. *Id.* at 310. Consequently, Rheem could not terminate Saucedo without good cause within the one year period from July 15, 1994, to July 14, 1995.

Rheem principally relies on the case of *Dobson v. Metro Label Corp.*, 786 S.W.2d 63, 65–66 (Tex.App.—Dallas 1990, no writ). We find that case to be distinguishable. In *Dobson*, the written memorandum, while providing for an annual salary, provided neither an employee name nor position. In contrast, the memorandum in this case provided that Saucedo was the employee hired and stated the position in which he would be employed.

Rheem also relies on the cases of *Massey v. Houston Baptist Univ.*, 902 S.W.2d 81 (Tex.App.—Houston [1st Dist.] 1995, writ denied) and *Rios v. Texas Commerce Bancshares, Inc.*, 930 S.W.2d 809 (Tex.App.—Corpus Christi 1996, writ denied). We find both of those cases to be distinguishable. In *Massey*, the writing relied upon by Massey to satisfy the statute of frauds set forth a monthly, not annual, salary. *Massey*, 902 S.W.2d at 83–84. Houston Baptist University, Massey's employer, paid him a salary for several months after it terminated his employment. *Id.* at 84 n. 1. The court stated that at most Massey had a one month contract with Houston Baptist and that Houston Baptist could not arbitrarily terminate him within the one month period. *Id.* at 83–84. This holding is entirely consistent with our holding that the writing in this case shows that Saucedo had an annual contract with Rheem and that Rheem could not arbitrarily terminate him within the annual period.

In *Rios*, the memorandum relied upon by Rios to satisfy the statute of frauds was only an offer of employment that Rios was not asked to return and sign. While providing for a base salary of $28,000, the offer did not state a specific duration time upon which it was based. *Rios*, 930 S.W.2d at 815. Consequently, the court held that the offer did not create an employment agreement or limit Texas Commerce's right to terminate him at will. *Id.* In this case, there is no contention that the memorandum does not constitute an agreement between Rheem and Saucedo, and the memorandum does state a specific duration time upon which Saucedo's salary was based, that being annually. We sustain Saucedo's point of error number one as it relates to his breach of contract claim.

■ Saucedo's claims for fraud and promissory estoppel are based upon oral promises by Rheem's employees of employment until retirement. Such promises are unenforceable because they are barred by the statute of frauds. "[W]here a defendant's motion for summary judgment ... establishes the applicability of the Statute of Frauds as a matter of law, the movant does not have the burden to negate the plaintiff's claim of promissory estoppel." *Leach v. Conoco, Inc.*, 892 S.W.2d 954, 959 (Tex.App.—Houston [1st Dist.] 1995, writ dism'd w.o.j.). Instead, the nonmovant has the burden to raise a fact issue as to its promissory estoppel defense. *Id.* When seeking to estop the assertion of an otherwise valid statute of frauds defense, the oral promise relied upon must be to sign a written agreement that satisfies the statute of frauds, or there must be substantial reliance upon an oral misrepresentation that the statute has been satisfied. *Id.* Saucedo has established neither in this case. Therefore, he has failed to establish his right to rely on the doctrine of promissory estoppel.

■ Saucedo's fraud claim against Rheem is not necessarily precluded by the fact that the promise is unenforceable as a contract because of the statute of frauds, since his fraud claim is a tort action. *Sibley v. Southland Life Ins. Co.*, 36 S.W.2d 145, 146 (Tex. 1931). This court has held that if a plaintiff,

in a fraud action, is seeking damages for what he has lost as a result of the breach of a contract that is unenforceable under the statute of frauds, the fraud action is also barred by the statute of frauds. *Collins v. McCombs,* 511 S.W.2d 745, 747 (Tex.Civ. App.—San Antonio 1974, writ ref'd n.r.e.). In that opinion we inferred that one could recover under a fraud cause of action if the plaintiff sought what he had lost as a result of entering into the contract as opposed to what he would gain as a result of the contract. *Id.* Rheem argues that Saucedo may not base a fraud claim on a promise that is unenforceable due to the statute of frauds. It relies on the cases of *Quinn v. Workforce 2000, Inc.,* 887 F.Supp. 131, 135–36 (E.D.Tex. 1995); *Weakly v. East,* 900 S.W.2d 755, 758 (Tex.App.—Corpus Christi 1995, writ denied); *Leach v. Conoco, Inc.,* 892 S.W.2d 954, 960–61 (Tex.App.—Houston [1st Dist.] 1995, writ dism'd w.o.j.); *Collins v. Allied Pharmacy Management, Inc.,* 871 S.W.2d 929, 935–36 (Tex.App.—Houston [14th Dist.] 1994, no writ); *Benoit v. Polysar Gulf Coast, Inc.,* 728 S.W.2d 403, 408 (Tex.App.—Beaumont 1987, writ ref'd n.r.e.); *Webber v. M.W. Kellogg Co.,* 720 S.W.2d 124, 129 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.); and *Wade v. State Nat'l Bank,* 379 S.W.2d 717, 720 (Tex.Civ.App.—El Paso 1964, writ refd n.r.e.).

It is unclear whether Rheem is arguing that one could not ever maintain a claim for fraud arising out of a promise unenforceable under the Statute of Frauds. If it is, its view is supported by *Wade,* 379 S.W.2d at 720, and *Collins,* 871 S.W.2d at 936. One of the cases it cites, *Weakly v. East,* holds that the statute of frauds bars fraud claims arising out of the unenforceable promise unless the fraud prevents the necessary writing. 900 S.W.2d at 758. Some of the cases that it cites are not inconsistent with our holding in *Collins.* These include *Webber,* 720 S.W.2d at 129; *Leach,* 892 S.W.2d at 960–61; and *Benoit,* 728 S.W.2d at 408.

Saucedo's amended pleading does not specify the nature of the fraud damage that he seeks. In his brief he states that he is seeking to recover what he lost by being fraudulently induced to resign and leave Findlay Industries. He indicates that he is not seeking to enforce the oral promise nor to recover the benefit of the bargain, what he would have gained thereby, but instead is seeking what he lost by being fraudulently induced to resign and leave Findlay Industries. However, the only damages specifically referenced in Saucedo's response to the summary judgment motion were damages resulting from Saucedo's termination rather than his leaving his prior employer. He did not assert any limitations on his damages as a basis for not granting the motion for summary judgment. Issues not expressly presented to the trial court by written motion, answer, or other response shall not be considered on appeal as grounds for reversal. TEX.R. CIV. P. 166a(c). We therefore hold that the trial court did not err in granting Rheem's summary judgment with respect to Saucedo's fraud claim.

### Conclusion

We sustain Saucedo's sole point of error with respect to his breach of contract claim, limited to damages suffered by him as a result of his termination from the date of termination until July 14, 1995, or earlier if determined to be limited by the after-acquired evidence doctrine. We overrule Saucedo's point of error as to all other claims.

GREEN, J., concurring and dissenting.

GREEN, Justice, dissenting.

I disagree with the majority's holding that an employment contract for one year was established through evidence that Rheem agreed to pay Saucedo a "base salary of $36,000 annually." I therefore dissent to that portion of the opinion and to the judgment that is affected by it.

I am, however, somewhat uneasy in my disagreement because the majority opinion is grounded on long-standing legal precedent. I am aware of the so-called English Rule cases relied on by the majority which hold that when an employee is hired at a stated sum per week, month, or year, the employment is for the period stated. *See Winograd v. Willis,* 789 S.W.2d 307, 310 (Tex.App.— Houston [14th Dist.] 1990, writ denied). But

for the reasons given below, I cannot agree that the English Rule is a legal principle that we should continue to follow.

The source of my disagreement with the English Rule is the existence of the presumption of at-will employment in this State, which presumption is only overcome by express agreement of the parties. *See Federal Express Corp. v. Dutschmann,* 846 S.W.2d 282, 283 (Tex.1993) ("The long-standing rule in Texas provides for employment at will, terminable any time by either party, with or without cause, absent an *express agreement* to the contrary.") (emphasis added); *American Lantern Co. v. Hamilton,* No. 04–95–00517–CV, slip op. at 4, —— S.W.2d ——, ——, 1997 WL 667167 (Tex.App.—San Antonio, Oct. 19, 1997, n.w.h.). A discharged employee who asserts that the parties have contractually agreed to limit the employer's right to terminate the employee has the burden of proving an express agreement or written representation to that effect. *Id.* The presumption of at-will employment may only be rebutted by an agreement that directly limits, in a meaningful and special way, the employer's right to terminate at will. *Id.* at 5, at ——.

In determining whether Saucedo met his burden of proving the parties entered into an agreement to change his at-will status, we apply the usual rules of contract formation. A binding contract consists of an offer, an acceptance, an exchange of consideration, a meeting of the minds, and consent to the terms of the agreement. *See id.* at 7, at ——. The intent of the parties is an objective determination based on the acts and communications between the parties and the surrounding circumstances. *Id.* The terms of the contract must be sufficiently certain so that there is no doubt what the parties intended. *Id.*

Saucedo points to the memorandum confirming his employment as containing an express agreement that limits, in a meaningful and special way, Rheem's right to terminate at will. The memorandum lists several "highlights" of the offer of employment and concludes by noting that Saucedo has accepted the offer. One of the listed highlights is "Base salary of $36,000 annually." Saucedo construes this provision as an agreement for a one-year term of employment renewable at the end of each year. *See Winograd,* 789 S.W.2d at 310.

*Winograd* supports Saucedo's argument. It held that "a hiring based on an agreement of an annual salary limits in a 'meaningful and special way' the employer's prerogative to discharge the employee during the dictated period of employment." *Id.; see Molnar v. Engels,* 705 S.W.2d 224, 225 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.). Significantly, however, neither *Winograd* nor *Molnar* address the question of whether by simply stating a salary rate the parties intended for a term of employment to be created.

The supreme court has not directly addressed this question either. But it has instead continued to state that the at-will presumption in Texas may only be overcome by the express agreement of the parties. *See Goodyear Tire and Rubber Co. v. Portilla,* 879 S.W.2d 47, 51 (Tex.1994) ("The at-will doctrine only applies *absent* a specific contractual provision to the contrary.") (emphasis in original); *Dutschmann,* 846 S.W.2d at 283. Thus, there is an apparent inconsistency between the English Rule's implied agreement to limit an employer's right to terminate and the supreme court's insistence that such an agreement be specific. If we follow the supreme court rule that the at-will presumption is only overcome by an employment contract that specifically and expressly indicates the mutual understanding and intent of the parties that the employer is giving up its right to terminate the employee at-will, then the mere expression of an employee's compensation as a rate of pay is insufficient to alter the at-will status of the employee. That is, no term of employment is thus created.

Nothing in the memorandum of employment indicates that the language "Base salary of $36,000 annually" was intended by Rheem to evince an agreement that Saucedo was to have a one-year term of employment. At best, the language is equivocal and fails to satisfy Saucedo's burden to overcome the at-will presumption. Moreover, the remainder of the memorandum belies any such intent on Rheem's part. Other "highlights" listed in the memorandum include:

Additional monthly compensation for the extended [M]exican work day and border crossing time. This will be paid in a separate check and calculates at 26.8% of your base pay.

Compensation for approved overtime at a straight hourly rate.

Monthly payment of $45.00 to help defray border bridge toll.

The memorandum thus sets out the different types of remuneration Saucedo would receive, with each form of remuneration classified by a time period. Construed in the context of these provisions, the language "Base salary of $36,000 annually" expresses a pay rate, not a term of employment. *Cf. Travel Masters, Inc. v. Star Tours, Inc.,* 827 S.W.2d 830, 832–33 n. 2 (Tex.1992) (noting the mere fact that employee was paid on a monthly basis, without any other evidence, failed to establish that she was not an employee-at-will).

The English Rule cases ignore the realities of modern day hiring practices. Rarely, if ever, does an employer intend to hire an employee for a one-year term simply by offering a salary expressed as an annual rate of pay. The use of annual salary rates by employers is simply a means of quantifying on an annual basis the daily, weekly or monthly paychecks the employee will actually receive. The incongruity of the Rule is easily demonstrated. For example, if the phrase "annual salary" expresses an intent for a one-year term of employment, then it must follow that the phrase also means the employee has to work a full year before receiving a paycheck. Yet few would accept employment on those conditions. Moreover, the worst effects of the Rule can be avoided merely by expressing salary in terms of daily or weekly pay rates. Whatever the original reason for the English Rule, I believe it has outlived its purpose and should be abolished.

In summary, Rheem's memorandum of employment fails to express the mutual intention of the parties that Saucedo was to be hired for a one-year term of employment. Consequently, the at-will presumption prevails. For this reason, I would overrule Saucedo's single point of error in its entirety and would affirm the judgment of the trial court.

## ON APPELLEE'S MOTION FOR REHEARING

In our opinion on original submission, we sustained Saucedo's point of error number one as it related to his breach of contract claim. We held, based upon long-standing authority, that the memorandum of the employment agreement between Rheem and Saucedo, which provided for an annual salary, limited in a meaningful and special way the employer's prerogative to discharge the employee during the dictated period of employment.

Within the same week as we issued our opinion, the Texas Supreme Court issued its opinion in the case of *Montgomery County Hosp. Dist. v. Brown,* 965 S.W.2d 501 (1998). That case involved an oral promise to an employee that she would be able to keep her job as long as she was doing her job and that she would not be fired unless there was good reason or good cause. The Court of Appeals had reversed a summary judgment that the trial court granted in favor of the employer, holding that the employer's promise created a fact issue. The Texas Supreme Court, in reversing the judgment of the Court of Appeals, held that for a contract of employment to exist that would vary the status of employment at will, the employer must unequivocally indicate a definite intent to be bound not to terminate the employee except under clearly specified circumstances. 965 S.W.2d at 502–03. It held that the employer's general comments that an employee will not be discharged as long as his or her work is satisfactory do not in themselves manifest such an intent. *Id.* It stated that, "An employee who has no formal agreement with his employer cannot construct one out of indefinite comments, encouragements, or assurances." *Id.* We believe that the promise made by the employer in *Montgomery County Hospital District* is more definite regarding the terms of employment than the representation in this case of what Saucedo's annual salary was to be. Consequently, we grant Rheem's motion for rehearing, overrule Saucedo's point of error number one

and Saucedo's motion for rehearing, and affirm the judgment of the trial court.