**Bob D. STONE, Plaintiff,**

v.

**JO–ANN STORES, INC.,
et al.   Defendants.**

**No. 5:99CV1474.**

United States District Court,
N.D. Ohio.

Aug. 10, 2000.

William R. Holland, John F. Myers, Nancy Holland Myers, Holland & Myers, Akron, OH, for Plaintiff.

Mark S. Floyd, Sindy J. Policy, Thompson, Hine & Flory, Michael J. Frantz, Michael N. Chesney, Frantz Ward, Cleveland, OH, for Defendants.

## MEMORANDUM OPINION AND ORDER

ECONOMUS, District Judge.

This matter is before the Court upon the Motion of the Defendants, Jo–Ann Stores, Inc. ("Jo–Ann Stores"), Don Richey ("Richey"), John Hermsen ("Hermsen"), Rosalind Thompson ("Thompson"), Marguerite Harris ("Harris"), and Carolyn Tackett ("Tackett") for summary judgment (Dkt.# 32). This Court, in a Memorandum Opinion and Order dated December 7, 1999 (Dkt.# 18), held that Texas law governs the Plaintiff's claims. Accordingly, the Plaintiff, Bob D. Stone ("Stone") filed a Second Amended Complaint alleging in Count One that, under Texas law the Defendants breached their employment contract with him. In Count Two, the Plaintiff has alleged, also under Texas law, that the Defendants fraudulently induced him into entering the same employment agreement without any intention of performing their obligations thereunder.

For the following reasons, the Defendants' Motion for Summary Judgment (Dkt.# 32) is **GRANTED**.

## FACTS

Before the Court states the facts relevant to the Plaintiff's respective claims for breach of contract and fraud, it is necessary to note that the Plaintiff and the Defendants have often stated facts that do not relate to the legal claims asserted. Most simply stated, this case is not an employment discrimination case. Therefore, facts asserted in support of any type of discrimination claim do not form the basis of this Court's opinion except to the extent that they are relevant to one or both of the Texas common law claims made by the Plaintiff in his Second Amended Complaint.

The following facts are not in dispute. The corporate Defendant Jo–Ann Stores, Inc.[1], ("Jo–Ann Stores") is an Ohio corporation which operates over 900 retail fabric stores nationwide. (Thompson Aff. ¶ 2). In October 1994, Jo–Ann Stores acquired Cloth World, Inc. ("Cloth World"), another fabric retailer. (Thompson Aff.¶ 3). As a result of that acquisition, Jo–Ann Stores invited several former Cloth World employees, including the Plaintiff, to maintain their current positions. (June 4, 1997, Deposition of Bob Stone, at 8) ("Stone Dep. I"). A letter, dated October 3, 1994 (the "Offer Letter"), was sent to Stone, confirming the terms of his employment offer, such as his base salary, bonus plan, automobile allowance, and benefits. (Stone Dep. I at 32). Stone signed the bottom of the Offer Letter, indicating his acceptance of Jo–Ann Stores' offer to continue as district manager in Houston, Texas. (See Defts.' Memorandum in Support, Exhibit E.)

On June 1, 1995, Rosalind Thompson sent Stone and the other managers a memorandum entitled "Fall Sales Meeting Update." Attached to the memorandum was a Personal Stat Sheet (Second Amended Complaint, Exhibit A) which contained a series of questions designed to elicit information from management employees in preparation for the 1995 fall sales meeting. The information gathered using the Personal Stat Sheet was compiled into a document called "Amazing & Useless Data" (Second Amended Complaint, Exhibit B) which was apparently used as an icebreaker at the fall sales meeting. (Harris Dep. at 31.) Stone asserts that the Defendants "deliberately, intentionally and falsely made representations in the ... [Fall Sales Meeting Update Memorandum and Personal Stat Sheet, Amazing & Useless

---

1. At the time of the acquisition, Jo–Ann Stores was doing business as Fabri–Centers of America, Inc.

Data compilation, and the Offer Letter].'' (Second Amended Complaint ¶ 27.) Stone, however, fails to specify upon which representations in each of these documents he reasonably relied to his detriment in accepting employment with Jo–Ann Stores. (Second Amended Complaint ¶¶ 28–29.)

Following the 1995 fall sales meeting, Stone remained a district manager in Houston. In a memorandum dated February 8, 1996, Stone was disciplined for a violation of Jo–Ann Stores' equal employment opportunity policy. (Harris Aff. ¶ 6; Stone Dep. I at 98–101.) Subsequently, Stone was discharged from his position as district manager on March 22, 1996, after refusing Jo–Ann Stores' offer of employment as a store manager. (Stone Dep. I at 19, 38, 40.)

## SUMMARY JUDGMENT

Fed.R.Civ.P. 56(c) governs summary judgment and provides, in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law.

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact, and for these purposes, the evidence submitted must be viewed in the light most favorable to the nonmoving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

"The burden on the moving party may be discharged if the moving party demonstrates that the non-moving party has failed to establish an essential element of his or her case for which he or she bears the ultimate burden of proof at trial." *Morales v. American Honda Motor Co., Inc.*, 71 F.3d 531, 535 (6th Cir.1995). If the moving party meets this burden, then the non-moving party must present additional evidence beyond the pleadings. *See id.* The non-moving party must present more than a scintilla of evidence in support of his or her position. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment must be granted unless there is sufficient evidence favoring the non-moving party for a judge or jury to return a verdict for that party. *See id.* at 249, 106 S.Ct. 2505.

### A. *Stone's Claim for Breach of Contract*

■ Stone's claim that the Offer Letter of October 3, 1994, constituted an annually-renewable employment contract under Texas law, and that Jo–Ann Stores breached this alleged contract by failing to give Stone advance warning prior to his termination, is without merit. Stone was an at-will employee under Texas law, which means that he could be terminated at any time without advance warning and without cause. In Texas, "absent a specific agreement to the contrary, employment may be terminated by the employer or the employee at will, for good cause, bad cause, or no cause at all." *Montgomery County Hospital Dist. v. Brown*, 965 S.W.2d 501, 502 (Tex.1998). In other words, the court held, for employment to be classified other than at-will, "the employer must unequivocally indicate a definite intent to be bound not to terminate the employee except under clearly specified circumstances." *Id.* The plaintiff in *Montgomery* claimed that she was terminated from her job without good cause, and that her employer breached its *oral* employment contract with her. *See id.* This contract, alleged the plaintiff, was created by an oral statement made by her employer that she would not be fired except for good reason or good cause. *See id.* The Texas Supreme Court concluded that such an oral statement by an employer was not sufficiently specific to indicate an intent to be contractually bound not to discharge an employee other than for good cause. *See id.*

■ The facts of *Montgomery,* however, differ from those in the case *sub judice* in that Stone alleges that he had a *written* employment agreement with Jo–Ann Stores. The Plaintiff contends that *Montgomery* did not address the long-standing precedent in Texas that, absent special circumstances, a written confirmation or agreement stating a rate of pay per week, month, or year, is a definite employment for that time period indicated, and cannot be concluded arbitrarily. This rule is known as the English Rule. *See e.g., Ronnie Loper Chevrolet–Geo, Inc., v. Hagey,* 999 S.W.2d 81, 84 (Tex.App.—Houston (14 Dist.) 1999); *Demunbrun v. Gray,* 986 S.W.2d 627, 628 (Tex.App.—El Paso 1998); *AccuBanc Mortgage v. Drummonds,* 938 S.W.2d 135, 142 (Tex.App.—Fort Worth 1997); *Massey v. Houston Baptist University,* 902 S.W.2d 81, 83–84 (Tex.App.—Houston (1 Dist.) 1995); *Winograd v. Willis,* 789 S.W.2d 307, 310 (Tex.App.—Houston (14 Dist.) 1990). The English Rule is in conflict with the more broadly stated *Montgomery* holding that, for a binding employment contract to exist, an employer must express an "unequivocal intent to be bound not to terminate."

The apparent conflict between the *Montgomery* holding and the English Rule was recognized and resolved by a Texas Court of Appeals in *Saucedo v. Rheem Mfg. Co.,* 974 S.W.2d 117 (Tex.App.—San Antonio 1998). Indeed, one of the principal issues in *Saucedo* was whether a written job offer confirmation, which stated a proposed annual salary, yet failed to indicate any term of employment, constituted a binding, one-year employment agreement. The Texas Court of Appeals, following the opinion in *Winograd, supra,* originally held that the agreement of annual salary limited "in a meaningful and special way the employer's prerogative to discharge the employee during the dictated period of employment." *Saucedo,* 974 S.W.2d at 125. However, the same week

the court of appeals' issued its opinion in *Saucedo,* the Texas Supreme Court issued its opinion in *Montgomery.* As a direct result of the *Montgomery* opinion, the *Saucedo* Court granted a rehearing and amended its original opinion to hold that the plaintiff's employment was at-will, and that the mere written statement of annual salary did not create binding employment for a one-year term. *See id.* at 128. The *Saucedo* Court reasoned, "[w]e believe that the [oral] promise made by the employer in [*Montgomery* ] is more definite regarding the terms of employment than the representation in this case of what *Saucedo's* annual salary was to be." *Id.* Recall that the employer in *Montgomery* made an oral promise that the employee would only be terminated for good cause, while *Saucedo* and the case *sub judice* concern the written statement of annual salary.

Thus, *Saucedo* is persuasive in its resolution of the conflict between the English Rule and the Texas Supreme Court's rule in *Montgomery,* and is instructive in the case *sub judice.* The Offer Letter confirming the Plaintiff's employment and stating his annual salary is in no way a definite, "unequivocal" expression of the Defendant Jo–Ann Stores' intention of hiring Stone for a one-year term of employment. It simply states a rate of pay.[2]

Stone, through his own deposition testimony, conceded that it was his understanding that the Offer Letter did not dictate any particular term of employment, and that the Offer Letter did not limit the right of either party to terminate Stone's employment. (Stone Dep. II at 9–11.) Indeed, in his June 4, 1997, deposition, Stone testified that he understood there to be no contract whatsoever:

Q. So it's your understanding you did not have a contract with Fabri–Centers?

---

2. *See also, Travel Masters, Inc. v. Star Tours, Inc.,* 827 S.W.2d 830, 832 n. 2 (1991) (noting that the mere fact the employee was paid on a monthly basis, without any other evidence, failed to establish that she was not an employee-at-will).

A. Yes.

Q. Yes, you did not have a contract?

A. That we didn't have a written contract guaranteeing a job through year number whatever. We had just the agreement that our benefits were what were spelled out at the beginning of each year.

Q. The only agreement you had was as to how much you would be compensated and what benefits you would receive?

A. That is correct.

(Stone Dep. I at 89–90.) Stone later testified that the Offer Letter did in fact constitute a "contract." (Stone Dep. II at 12.) However, even if a contract existed as he contends, the Plaintiff has consistently testified in both of his depositions that there was never any agreement or contract with respect to his length of employment with Jo–Ann Stores. (Stone Dep. II at 9–14, 31–32.) Instead, Stone alleges only that he understood there to be a policy requiring advance, written notification or warning before termination, even though he admittedly has no knowledge of anything in writing to that effect. (Stone Dep. II at 34–36.) Furthermore, such a policy is certainly not encompassed in the Offer Letter. (Stone Dep. II at 9.)

Stone also testified that he was told many times that, as long as he was doing a good job, he would have a job with Jo–Ann Stores. (Stone Dep. II at 36–38.) Such oral assurances, however, are not binding on an employer. *See Montgomery*, 965 S.W.2d at 502. The Texas Supreme Court has been explicit that oral encouragements and/or assurances are insufficiently specific to justify the conclusion that the employer intends by them to make a binding contract of employment. *See id.* The court reasoned, in relevant part:

> General comments that an employee will not be discharged as long as his work is satisfactory do not in themselves manifest such an intent. Neither do statements that an employee will be dis-

charged only for "good reason" or "good cause" when there is no agreement on what those terms encompass.

*Id.* Therefore, any such statements made during the course of Stone's employment are not binding under Texas law, and in no way rebut the presumption of Stone's at-will employment status.

In summary, Stone himself has conceded that the Offer Letter was not an agreement for any particular term of employment, and that both he and his employer could terminate their relationship at any time. Stone has thus affirmed that he was an at-will employee, since there was no specific agreement to the contrary. Furthermore, the alleged oral assurances made to Stone regarding his job security, "as long as he was doing his job," are not binding under Texas law. For all of these reasons, Stone's claim for breach of contract fails as a matter of law.

### B. *Stone's Claim for Fraud*

Stone next claims that Jo–Ann Stores and certain of its officers deliberately and intentionally made false representations in three separate documents: (1) a Personal Stat Sheet; (2) a compilation of the survey's results; and (3) the October 3, 1994, Offer Letter. It is Stone's contention that false representations were made so that Stone would rely on them to effect a smooth transition during Jo–Ann Stores' acquisition of Cloth World. Stone alleges that it was Jo–Ann Stores' plan all along to eventually discharge Stone and other similarly situated employees.

In order to sustain a claim of fraud in Texas, a plaintiff must prove (1) a material representation; (2) which was false; (3) which was known to be false when made or was asserted without knowledge of the truth; (4) which was intended to be acted upon; (5) which was relied upon; and (6) which caused injury. *See DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 688 (Tex.1990). By his own testimony, however, Stone plainly concedes that he has no

evidence supporting his fraud claim, except for his own speculation.

■ The plaintiff in *DeSantis* claimed that he was fraudulently induced to sign a non-competition agreement by way of the defendant's allegedly false representation that the plaintiff was being considered for an executive position. *See id.* at 688. The trial court directed a verdict in defendant's favor, and the Texas Supreme Court affirmed, finding that the plaintiff had no evidence to support even one of the required elements of his fraud claim. *See id.* at 689.

Likewise, not only has Stone failed to provide any evidence to support a single element of fraud, he completely fails to indicate which representation was false. Indeed, with regard to the Offer Letter, Stone testified:

Q. At the time Mr. Richey wrote this letter, ... do you believe he lied about anything?

A. I don't believe he lied.

Q. You have no reason to believe he lied?

A. I don't know what he was thinking.

(Stone Dep. II at 18). Next, regarding the Personal Stat Sheet questions, Stone testified that he couldn't imagine what could possibly be false on that sheet. (Stone Dep. II at 41–43). Finally, with respect to the survey results, which were presented at a fall sales meeting, Stone testified:

Q. Do you know if there's any fact in here that's untrue?

A. Oh, I have no way of knowing if the people that filled out this information gave their right age. Or if they're ticklish, they might be ticklish and say I don't know if I'm ticklish and so I'll say no. Probably this thing is full of falsehoods.

Q. You wouldn't attribute that to the company?

A. Well, I don't know. The company may decide that's too much, let's change it.

Q. You don't have any reason to believe they did that, do you?

A. I don't know.

(Stone Dep. II at 48–49).

Stone's speculative statements, whether based on his past experience or based on belief, fail to create a genuine issue of material fact for jury determination. Stone's complete failure to produce even a scintilla of evidence with respect to his fraud claim entitles the Defendants to summary judgment.

## CONCLUSION

Based upon the foregoing analysis, the Court finds that summary judgment is appropriate on both Count One and Count Two of the Plaintiff's Second Amended Complaint. Accordingly, the Defendants' Motion for Summary Judgment (Dkt.# 32) is hereby **GRANTED**.

**IT IS SO ORDERED.**